UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADRIAN ARRINGTON, DEREK OWENS, ANGELICA PALACIOS, and KYLE SOLOMON individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>    v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,<br><br>         Defendant. | Case No. 11-cv-06356<br><br>Hon. John Z. Lee<br><br>Magistrate Judge Brown<br><br>**JURY DEMAND** |

# PLAINTIFFS' PROPOSED TRIAL PLAN FOR TRIAL OF CLASS CLAIMS

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................................1

II. PRESENTATION OF COMMON PROOF FOR PLAINTIFFS' NEGLIGENCE
CAUSE OF ACTION ..........................................................................................................2

    A. Plaintiffs Will Prove with Common Evidence that the NCAA Has
Been Negligent............................................................................................................2

        1. Common evidence will be used to prove that the NCAA
owed a duty of care. ...............................................................................................3

        2. Common evidence will be used to prove that the NCAA
negligently breached that duty. ..............................................................................4

        3. Plaintiffs will use common evidence to prove that the
NCAA's negligence harmed Plaintiffs and every
Negligence/Medical-Monitoring Class Member by significantly
increasing their risk of repetitive concussions. ..............................................5

    B. Plaintiffs Will Prove with Common Evidence Their Need for
Medical-Monitoring Relief .........................................................................................6

III. APPLYING MULTISTATE LAW........................................................................................7

    A. The Two Negligence Classes Are Manageable ..........................................................9

        1. First element of negligence: the existence of a duty of care is
generally a legal question based on common law with only a
small number of variations among the states. .......................................................9

        2. The second element, NCAA's breach of duty, is a factual issue
without material variation among the states. ......................................................12

        3. The remaining elements of negligence, causation and injury, are
factual issues without material variation among the states. ................................13

    B. Medical-Monitoring Relief for the Negligence/Medical-Monitoring
Class Is Also Manageable .........................................................................................13

IV. CONCLUSION...................................................................................................................14

010270-11 623217 V1

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bower v. Westinghouse Elec. Corp.*,
   206 W. Va. 133 (W. Va. 1999) ................................................................................................14

*Cook v. Rockwell Int'l Corp.*,
   755 F. Supp. 1468 (D. Colo. 1991) ..........................................................................................14

*Donovan v. Philip Morris USA, Inc.*,
   914 N.E.2d 891 (Mass. 2009) ..................................................................................................14

*Gillespie v. Equifax Info. Servs., LLC*,
   2008 U.S. Dist. LEXIS 82483 (N.D. Ill. Oct. 15, 2008) ............................................................1

*Hansen v. Mountain Fuel Supply Co.*,
   858 P.2d 970 (Utah 1993) ........................................................................................................14

*In re Baycol Prods. Litig.*,
   218 F.R.D. 197 (D. Minn. 2003) ..........................................................................................7, 14

*In re Checking Account Overdraft Litig.*,
   281 F.R.D. 667 (S.D. Fla. 2012) ................................................................................................8

*In re Diet Drugs Prods. Liab. Litig.*,
   1999 U.S. Dist. LEXIS 13228 (E.D. Pa. Aug. 26, 1999) .....................................................7, 13

*In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ......................................................................................................8

*In re Telectronics Pacing Sys., Inc.*,
   172 F.R.D. 271 (S.D. Ohio 1997) ........................................................................................7, 13

*In Re: Welding Fume Prods. Liab. Litig.*,
   245 F.R.D. 279 (N.D. Ohio 2007) ..............................................................................7, 13, 14

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) .................................................................................................8

*Lamping v. American Home Prods.*,
   2000 Mont. Dist. LEXIS 2580 (Mont. Dist. Ct. 2000) ............................................................14

*Lawson v. Superior Ct.*,
   103 Cal. Rptr. 3d 834 (Cal. App. 4th Dist. 2010) ...................................................................12

*Redland Soccer Club v. Department of the Army*,
   548 Pa. 178 (Pa. 1997) ............................................................................................................14

*Saltzman v. Pella Corp.*,
　257 F.R.D. 471 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010) ........................................9

*Swartout v. Raytheon Co.*,
　2008 U.S. Dist. LEXIS 65724 (M.D. Fla. July 16, 2008) ......................................................14

*Walsh v. Ford Motor Co.*,
　807 F.2d 1000 (D.C. Cir. 1986) ................................................................................................8

*Wooden v. Board of Regents*,
　247 F.3d 1262 (11th Cir. 2001) ................................................................................................8

### OTHER AUTHORITIES

MANUAL FOR COMPLEX LITIGATION § 21.23 (4th ed. 2004) ...........................................................8

MANUAL FOR COMPLEX LITIGATION § 22.754 (4th ed. 2004) .........................................................8

PROSSER & KEETON, TORTS § 56 (5th ed. 1984) ....................................................................3, 12

RESTATEMENT (SECOND) OF TORTS § 314A (1965) ..................................................................11, 12

RESTATEMENT (SECOND) OF TORTS § 323 (1965) ......................................................................4, 10

I.     INTRODUCTION

Plaintiffs respectfully submit this Trial Plan in support of their motion for class certification. The plan provides a roadmap to aid the Court in assessing how a single trial can be conducted against the NCAA on behalf of multiple classes under multiple state laws in an efficient and manageable manner.[1] This plan is necessarily preliminary. Plaintiffs may suggest changes to this plan (and reserve the right to do so) in advance of trial in light of new developments in this litigation.

Plaintiffs envision a single trial. Before trial, the Court will determine whether the NCAA owed Plaintiffs and the Classes a duty of care. While there are variations of law on this first negligence element among the states, they are few and manageable. Assuming the Court finds a duty of care, at trial Plaintiffs will present their case-in-chief, submitting common evidence of NCAA's breach of duty and the ensuing increased risk of concussions and need for medical monitoring. The burden then shifts to NCAA to present its defenses, after which Plaintiffs will put on their rebuttal case. The Court will then enter a verdict based on Special Verdict Forms that take into account the several variations among state laws for the 18-state Negligence/Medical-Monitoring Class and the 51-jurisdiction Negligence Core-Issues Class.

Plaintiffs will present their case through a handful of the NCAA's own witnesses and documents, and through their expert, Robert Cantu, a neurosurgeon with 30 years of specific expertise in sports-related head injuries. Because NCAA's policies and practices were virtually

---

[1] Rule 23 does not require submission of a trial plan, nor does the Seventh Circuit. *See Gillespie v. Equifax Info. Servs., LLC*, 2008 U.S. Dist. LEXIS 82483, at *26 (N.D. Ill. Oct. 15, 2008) ("the Seventh Circuit has imposed no such requirement as a prerequisite to class certification"). Plaintiffs submit one nonetheless to describe the issues likely to be presented at trial and show that they are susceptible of class-wide proof and readily managed.

uniform across all Class Members during the entire Class Period, presentation of evidence demonstrating the NCAA's conduct will not be overly complex.

As to the Rule (b)(2) Negligence/Medical-Monitoring Class claim on behalf of the 18-state Class, if a verdict is returned for the NCAA, judgment dismissing the claim with prejudice would enter. If a verdict for the Plaintiff Class results, judgment will be entered on behalf of the Class for a medical-monitoring program that periodically assesses concussion-related changes in neurological function.

As to the Rule (c)(4) Core-Issues Class, if the Court finds that the NCAA owed no duty of care, or if the jury finds that the NCAA did not breach its duty under the laws of any states, the NCAA can then rely on those findings to seek dismissal of any individual negligence claim filed later by Class Members of those states. Conversely, if the Court and jury find for the Core-Issues Class on these two issues under the laws of any states, those findings will govern in any individual negligence claim later filed by Class Members in those states.

## II. PRESENTATION OF COMMON PROOF FOR PLAINTIFFS' NEGLIGENCE CAUSE OF ACTION

For their core negligence issues and, for the 18-state Negligence/Medical-Monitoring Class, the remaining elements of causation, injury and entitlement to medical-monitoring relief, Plaintiffs will rely on common proof derived directly from the NCAA's own witnesses and documents, or from Plaintiffs' expert, to prove their claims. Below is an evidentiary outline demonstrating how this case will be tried as a class action.

### A. Plaintiffs Will Prove with Common Evidence that the NCAA Has Been Negligent

All 51 jurisdictions recognize the same four basic elements of negligence. Those elements are: (i) defendant owed a duty of care, (ii) defendant negligently breached that duty,

(iii) the breach proximately caused, and (iv) damage or injury.[2] Plaintiffs will prove these elements using evidence common to all Class Members. Plaintiffs' proof as to the first two elements, duty and breach, will also apply to all Rule 23(c)(4) Issues Class Members. Plaintiffs submit with their class-certification motion a Proffer of Common Facts ("Proffer") in Support of Motion for Class Certification. The Proffer sets forth Plaintiffs' evidence common to the claim and/or issues of all Class Members that they will use at trial. Plaintiffs also submit the Report of Dr. Robert Cantu ("Cantu Report"). Dr. Cantu is the nation's leading expert on athletic brain trauma and a pioneer in the study of the link between concussions and progressive brain disease in athletes.

**1.    Common evidence will be used to prove that the NCAA owed a duty of care.**

To prove that the NCAA owed a duty of care to Plaintiffs and each Class Member, the Proffer first identifies the evidence establishing the NCAA's role as guardian of student-athletes' safety and its knowledge of the dangers posed by concussions to student-athletes.[3] The NCAA's self-proclaimed role as the student-athletes' guardian created a special relationship that gave rise to an affirmative duty of care to protect them from harm.[4] And pursuant to its self-proclaimed

---

[2] *See* Table 1 (Tables 1-5 are attached hereto as Exhibit A). Some jurisdictions merge proximate cause and damages. See, for example, *id.* at 2 (Illinois). Another state, Louisiana, splits legal cause and cause-in-fact into separate elements. *Id*. at 3.

[3] Proffer, ¶¶ 1-23.

[4] Prosser explains this relationship in *Prosser & Keeton, Torts* (5th ed. 1984) § 56, at 374:

> In such relationships the plaintiff is typically in some respect particularly vulnerable and dependent upon the defendant who, correspondingly, holds considerable power over the plaintiff's welfare. [Footnote omitted.] In addition, such relations have often involved some existing or potential economic advantage to the defendant. [Footnote omitted.] Fairness in such cases thus may require the defendant to use his power to help the plaintiff, based upon the plaintiff's expectation of protection, which itself may be based upon the defendant's expectation of financial gain.

guardian role, the NCAA actually undertook affirmative – although inadequate – steps to protect student-athletes, which likewise gave rise to a duty of care.[5]

### 2. Common evidence will be used to prove that the NCAA negligently breached that duty.

Plaintiffs set forth their common evidence proving that the NCAA negligently breached its duty of care owed to them and Class Members in the Proffer. They describe the NCAA's knowledge of the dangers of concussions to student-athletes.[6] They then detail the consensus reached in the scientific and medical communities regarding concussion-management and return-to-play standards – and the NCAA's decisions not to follow at each critical time period.[7] And when the NCAA belatedly did implement concussion-management plans for the 2010-11 school year, it ignored whether schools followed it.[8] Indeed, while the NCAA purported to delegate its duty to protect student-athletes to its member schools, it knew the schools were not following the standard of care and chose not to enforce it.[9]

Furthermore, educating student-athletes, parents and coaches about recognizing concussions and the consequences of returning to play while still symptomatic is a critical component of the standard of care. The NCAA knew this but before 2010 provided no such education, and since 2010 its concussion-education program has been inadequate, ill-conceived, and of such small scale as to ensure that the three target groups remained uninformed.[10]

---

[5] Common law in every jurisdiction imposes a duty of reasonable care on a party who, like the NCAA, voluntarily undertakes to protect persons from physical harm. *See* RESTATEMENT (SECOND) OF TORTS § 323 (1965); Tables 2a & 2b.

[6] Proffer, ¶¶ 24-54.

[7] *Id*. at ¶¶ 55-138; Cantu Report, ¶¶ 98-217.

[8] Proffer, ¶¶ 135-38.

[9] *Id.* at ¶¶ 139-48.

[10] *Id*. at ¶¶ 149-62; Cantu Report, ¶ 193.

Plaintiffs thus will use common evidence to establish the first two elements of negligence on behalf of the Negligence/Medical-Monitoring Class and the Core-Issues Class. Common evidence submitted as proof of the remaining two negligence elements applies only to the Negligence/Medical-Monitoring Class.

**3.  Plaintiffs will use common evidence to prove that the NCAA's negligence harmed Plaintiffs and every Negligence/Medical-Monitoring Class Member by significantly increasing their risk of repetitive concussions.**

The above-summarized evidence also shows that the NCAA's negligence harmed Plaintiffs and every Negligence/Medical-Monitoring Class Member by significantly increasing each member's risk of repetitive concussions, an injury that 18 states recognize as remediable by appropriate medical monitoring. The evidence shows that the consensus concussion-management best practices that the NCAA failed to implement and enforce were designed to and would have significantly reduced the risk of repetitive concussions to Plaintiffs and each Negligence/Medical-Monitoring Class Member. The proposed representatives of this class, Plaintiffs Adrian Arrington, Derek Owens, and Angelica Palacios, will submit evidence of the concussion injury rates in NCAA sports,[11] which remained high throughout the Class Period,[12] while the NCAA failed to promulgate and enforce rules based on consensus concussion-management best practices. From this common evidence, Plaintiffs will show that the NCAA's negligent failure significantly increased the risk of repetitive concussions to them and all Negligence/Medical-Monitoring Class Members.

---

[11] *See, e.g.*, Proffer, ¶¶ 24-54.

[12] *Id.* at ¶¶ 45-46, 52-53, 83, 101, 118.

B. **Plaintiffs Will Prove with Common Evidence Their Need for Medical-Monitoring Relief**

Plaintiffs will demonstrate through testimony from Dr. Cantu, as set forth in the Cantu Report, entitlement to medical-monitoring relief for all Negligence/Medical-Monitoring Class Members. Dr. Cantu will testify that concussions and even sub-concussive hits that are unrecognized put student-athletes at considerable risk of potentially catastrophic sequelae from re-injury. Repetitive head trauma (whether concussive or subconcussive hits) from participating in contact sports such as soccer, ice hockey, basketball, field hockey, lacrosse and wrestling can lead to a permanent decrease in brain function.[13] Here, the purpose of a medical-monitoring program for current and former student-athletes that have played contact sports is to determine whether they are suffering from post-concussion syndrome or other cognitive impairments or mental disturbances. Student-athletes may not know that their head injuries caused the debilitating symptoms they experience – and thus are not seeking the available treatments that they need to ease the symptoms associated with their head injuries.[14]

The proposed medical-monitoring program will include focused neurocognitive, visual, and balance assessments as part of the overall neurological examination. Concussions and subconcussive hits may cause trauma to the calcarine cortex, which is in the back of the brain and controls vision, and the cerebellum, at the top of the neck, where balance and coordination are measured. These areas are assessed in the neurological assessment. Concussions and subconcussive hits may also cause trauma to the thinking and reasoning parts of the brain

---

[13] Cantu Report, ¶ 304.

[14] *Id*. at ¶ 305.

(medial temporal lobe and frontal lobe). These areas are assessed in the neurocognitive assessment.[15]

Dr. Cantu's testimony will further identify the purpose, nature and cost of specific tests that an appropriate medical-monitoring program would entail.[16] He will testify that Class Members, informed of the results and/or diagnosis, will then be in a position to seek treatment appropriate to the diagnosis and be knowledgeable about the effects, if any, of concussions or subconcussive hits sustained at NCAA schools. The proposed medical-monitoring program will meet the standard of care and/or best practice for assessing and diagnosing individuals that played collision sports at NCAA member institutions and suffered concussions and subconcussive hits under the NCAA's inadequate Concussion-Management Plan.[17]

### III. APPLYING MULTISTATE LAW

Rule 23(b)(3), which applies to Plaintiffs' proposed Rule 23(c)(4) issues-only class, requires that common issues predominate and that class treatment is superior to other options. Although Rule 23(b)(2) has no predominance or superiority requirements, courts hold that plaintiffs must demonstrate that the application of multi-state law is manageable.[18] Plaintiffs have the burden of demonstrating a suitable and realistic plan for trial of the class claims and

---

[15] *Id.* at ¶ 319.

[16] *Id.* at ¶¶ 319-43.

[17] *Id.* at ¶¶ 344-47.

[18] *See, e.g., In Re: Welding Fume Prods. Liab. Litig.*, 245 F.R.D. 279, 294 (N.D. Ohio 2007); *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 211 (D. Minn. 2003); *In re Diet Drugs Prods. Liab. Litig.*, 1999 U.S. Dist. LEXIS 13228, at *43-44 (E.D. Pa. Aug. 26, 1999); *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 287 (S.D. Ohio 1997).

must submit an analysis showing that there are no material variations among the law of the states for which certification of a class is sought.[19]

The analysis in this Trial Plan and in the tables attached hereto demonstrates that applying the laws of multiple states to Plaintiffs' claims does not present difficult manageability issues. The applicable state laws can be grouped into several subclasses sharing largely identical legal standards. Plaintiffs will present evidence of all of these elements through uniform proof derived from the NCAA's documents, NCAA witnesses, or Plaintiffs' expert, as described more particularly above. Plaintiffs seeking to represent each subclass reside in one of the states belonging to that subclass or can otherwise adequately represent the interests of other states and, thus, they may represent Class Members residing in those other states included in the subclass.[20] Plaintiffs propose that at the conclusion of evidence, the fact finder be provided special verdict forms that take into account these variations among state laws. A proposed Special Verdict Form is attached as Exhibit B. As the proposed form demonstrates, the differences that do exist among state laws can readily be taken into account through the use of a discrete subclass, thus ensuring careful adherence to legal requirements and mitigating any manageability issues.

---

[19] *See*, *e.g.*, *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir. 2004) ("if the applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards, then certification of subclasses embracing each of the dominant legal standards can be appropriate"); *In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998) ("[c]ourts have expressed a willingness to certify nationwide classes on the ground that relatively minor differences in state law could be overcome at trial by grouping similar state laws together and applying them as a unit"); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986) (class certification is appropriate where "variations [in state law] can be effectively managed through creation of a small number of subclasses grouping the states that have similar legal doctrines"); *In re Checking Account Overdraft Litig.*, 281 F.R.D. 667 (S.D. Fla. 2012).

[20] *See* MANUAL FOR COMPLEX LITIGATION §§ 21.23, 22.754 (4th ed. 2004) (describing use of subclasses to take account of differences amongst the various states' laws and representation for each subclass); *Wooden v. Board of Regents*, 247 F.3d 1262, 1287-88 (11th Cir. 2001) (explaining that one class representative must have standing for each subclass).

### A. The Two Negligence Classes Are Manageable

Plaintiffs propose two negligence classes: (i) the Negligence/Medical-Monitoring Class, which will prosecute an entire negligence claim for medical-monitoring relief, on behalf of an 18-state class under Rule 23(b)(2), and (ii) the Negligence Core-Issues Class, which seeks findings on two core issues only – the negligence elements of duty and breach – under Rule 23(b)(3) and 23(c)(4) on behalf of a 51-jurisidiction class. While many states have developed variations in their respective negligence common laws, the differences are few, manageable, and derived from common sources. As such, a single subclass can accommodate the variations. This is even more so for the smaller, 18-state Negligence/Medical-Monitoring Class.[21]

To establish a negligence claim, all 51 jurisdictions require plaintiffs to prove four elements (although only the first two are relevant to the Core-Issues Class): (i) a duty of care, (ii) defendant's breach thereof, (iii) which proximately caused (iv) plaintiff's injury.[22]

#### 1. First element of negligence: the existence of a duty of care is generally a legal question based on common law with only a small number of variations among the states.

The Court will decide whether the NCAA owed student-athletes a duty of care.[23] In this case, the NCAA's duty of care arises from two well-established doctrines: (i) a party who undertakes an affirmative act or obligation to others owes a general duty to exercise the care of a reasonable person to protect them against an unreasonable risk of harm arising out of the

---

[21] *See Saltzman v. Pella Corp.*, 257 F.R.D. 471, 477 (N.D. Ill. 2009) (noting propriety of subclasses to accommodate state-law variations, citing *Klay*, 382 F.3d at 1262), *aff'd*, 606 F.3d 391 (7th Cir. 2010).

[22] *See supra* at 4; Table 1.

[23] In all jurisdictions, whether a duty exists is a question of law determined by the court. *See* Tables 3a & 3b.

affirmative act, and (ii) where a special relation exists between the parties that imposes a legal obligation upon one for the benefit of the other.

*Affirmative Act*: All states and the District of Columbia recognize that when a person undertakes an obligation to others, a duty of care arises to exercise the care of a reasonable person to protect them against an unreasonable risk of harm from the undertaking.[24] *Restatement (Second) of Torts* (1965), at § 323, describes this universally accepted source of duty:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

All 51 jurisdictions of the Core-Issues Class (and thus also the 18 states of the Negligence/Medical-Monitoring Class) recognize this source of a duty and adopt the *Restatement*'s description. The Court will be able to apply the common evidence described above to the § 323 test to determine, as a matter of law, whether the NCAA owed a duty of care to every member of the Negligence/Medical-Monitoring Class and the Core-Issues Class.[25]

---

[24] *See* Table 2a.

[25] In several states, such as Indiana, whether a defendant has assumed a duty is ordinarily a question of fact for the jury. *See* Table 3b. For that reason, the jury should consider the common evidence of the NCAA's assertion of control over collegiate sports, including safeguarding student-athletes during competition and practice, and thereby assuming a duty of reasonable care owed to members of the Negligence/Medical-Monitoring and Core-Issues Classes who participated in sports as a student of a college located in Indiana and the other states listed in Table 3b. The special-verdict questionnaire thus includes this duty-of-reasonable-care issue. The Court could also deem the jury's answer to be advisory for those states that designate the issue as a question of law (*see* Table 3a).

*Special Relationship*: Most states and the District of Columbia also recognize a second source of duty of care that applies to the NCAA: an affirmative duty to aid or protect another against an unreasonable risk of physical harm can arise in the context of a legally recognized "special relationship."[26] *Restatement (Second) of Torts*, at § 314A, describes this widely accepted source of duty. Styled "*Special Relations Giving Rise to Duty to Aid or Protect*," § 314A identifies four special relationships: (i) a common carrier to its passengers, (ii) an innkeeper to his guest, (iii) a possessor of land who holds it open to the public to members of the public who enter in response to his invitation, and (iv) one who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection.

While none of these relationships apply here, § 314A also states in an express "caveat" that "[t]he Institute expresses no opinion as to whether there may not be other relations which impose a similar duty." *Comment b* thereto thus states that "the relations listed are not intended to be exclusive, and are not necessarily the only ones in which a duty of affirmative action for the aid or protection of another may be found…. The law appears, however, to be working slowly toward a recognition of the duty to aid or protect in any relation of dependence or of mutual dependence."

Reflecting this "caveat," most states have found that the list is not exclusive and invoke a broader test to include other relationships within the § 314A duty of care.[27] These states, often relying on *Prosser & Keeton on Torts* (*see supra* at 3 n.4), recognize a "special relationship" that gives rise to a duty of care where plaintiff is particularly vulnerable and dependent upon the

---

[26] *See* Table 2a.

[27] *See* Table 2a.

- 11 -

010270-11 623217 V1

defendant who, hence, holds power over plaintiff's welfare.[28] But eight states do not, and instead appear to limit § 314A to the four relationships identified therein or otherwise bar special relationships as a source of duty by the NCAA to class members in these states.[29] Subclassing that excludes these eight states can reflect their restrictive special-relationship laws.

Plaintiffs thus propose sub-classes for both of the Negligence/Medical-Monitoring and Core-Issues Classes to reflect this variation: (i) a 17-state Negligence/Medical-Monitoring Special Relationship subclass that excludes Illinois,[30] represented by Plaintiffs Derek Owens and Angelica Palacios, and (ii) a 44-state Core-Issues Special Relationship subclass that excludes all eight states, also represented by Plaintiffs Derek Owens and Angelica Palacios.

**2.    The second element, NCAA's breach of duty, is a factual issue without material variation among the states.**

Both classes (including subclasses) will assert the second negligence element: whether the NCAA breached its duty of care. This presents strictly a factual question that the jury will decide based on common evidence and jury instructions. Jury instructions for this element are comparable across all jurisdictions. This element will be easily managed by the jury by answering similar questions corresponding to each state that will be provided to the jury in the special-verdict questionnaire.

---

[28] *See* PROSSER & KEETON, TORTS (5th ed. 1984) § 56, p. 374, *cited in University of Denver v. Whitlock*, 744 P.2d 54, 57 (Colo. 1987); *Lawson v. Superior Ct.*, 103 Cal. Rptr. 3d 834, 849 (Cal. App. 4th Dist. 2010).

[29] These eight states are Delaware, Illinois, Kansas, Louisiana, Maine, South Carolina, South Dakota, and Wisconsin. *See* Table 2b.

[30] Illinois is the only state among the eight that also permits medical-monitoring relief even without a present physical injury. *Compare* Table 2b *with* Tables 4 & 5.

### 3. The remaining elements of negligence, causation and injury, are factual issues without material variation among the states.

Only the Negligence/Medical-Monitoring Class (including subclasses) will assert the two remaining negligence elements: causation and injury. These also are factual issues for which there is no material variation among the 18 states. As with the breach-of-duty element, jury instructions for these elements are virtually identical across all jurisdictions. These elements will be easily managed by the jury by answering similar questions, and for a smaller number of states.

### B. Medical-Monitoring Relief for the Negligence/Medical-Monitoring Class Is Also Manageable

Courts have recognized that medical monitoring subclasses can be employed in an efficient manner to try class claims.[31] The primary variables to consider are whether a jurisdiction recognizes a cause of action for medical monitoring, permits medical monitoring as a remedy for negligence in the absence of a present physical injury, or permits medical monitoring as a remedy for negligence but requires a present physical injury. Plaintiffs have grouped the jurisdictions together into a single Negligence/Medical Monitoring Class for which materially identical legal standards apply.

---

[31] *See, e.g., In Re: Welding Fume Prods. Liab. Litig.*, 245 F.R.D. at 294 (court could manage the differences in medical monitoring laws of eight states by holding separate trials for each state-wide subclass or a combined trial for state-wide subclasses where the law is sufficiently similar to permit the use of jury instructions and a verdict form that were not too complex); *In re Diet Drugs Prods. Liab. Litig.*, 1999 U.S. Dist. LEXIS 13228, at *43-44 (subclasses can be created based on the variance of medical monitoring law and variances in the underlying claims, including negligence); *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. at 287 (certifying medical monitoring class and noting that only relevant variation in state law is whether injury is required). The *Welding Fume* court ultimately declined to certify the medical-monitoring class because Rule 23(a) typicality could not be established due to the large size of the class, the differences in multiple defendants' conduct, and the variable environments in which all of the welders worked – factors that are not at issue here where all Plaintiffs and Class Members have suffered the NCAA's negligence, which was uniformly applied to all class members.

The following 11 jurisdictions permit medical monitoring as a remedy for negligence even absent a present physical injury: Arkansas, Arizona, California, District of Columbia, Illinois, Indiana, Maryland, Missouri, New Jersey, New York, and Ohio.[32] In addition, the following seven states recognize medical monitoring as a cause of action and would, therefore, undoubtedly recognize medical monitoring also as a remedy for negligence: Colorado, Florida, Massachusetts, Montana, Pennsylvania, Utah, and West Virginia.[33] In these jurisdictions, the elements of the claim are materially similar, and require that the plaintiff suffer an increased risk of harm (as opposed to present injury).[34]

## IV. CONCLUSION

Plaintiffs' Trial Plan demonstrates that all of Plaintiffs' claims can be efficiently tried on a class-wide basis.

---

[32] *See* Table 4.

[33] *See* Table 5.

[34] *See Cook v. Rockwell Int'l Corp.*, 755 F. Supp. 1468, 1477 (D. Colo. 1991); *Swartout v. Raytheon Co.*, 2008 U.S. Dist. LEXIS 65724 (M.D. Fla. July 16, 2008); *Donovan v. Philip Morris USA, Inc.*, 914 N.E.2d 891, 901-902 (Mass. 2009); *Lamping v. American Home Prods.*, 2000 Mont. Dist. LEXIS 2580, at *13-14 (Mont. Dist. Ct. 2000); *Redland Soccer Club v. Department of the Army*, 548 Pa. 178, 195-196 (Pa. 1997); *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 979 (Utah 1993); *Bower v. Westinghouse Elec. Corp.*, 206 W. Va. 133, 141-142 (W. Va. 1999); *see also In Re: Welding Fume Prods. Liab. Litig.*, 245 F.R.D. at 293-94 ("The elements of a cause of action for medical monitoring in Florida, Pennsylvania, Utah, and West Virginia, for example, are virtually identical."); *In re Baycol Prods. Litig.*, 218 F.R.D. at 211 (explaining that, "[o]f the states that do recognize medical monitoring as an independent cause of action, the elements of such a claim appear to be the same").

| | |
|---|---|
| Date: July 19, 2013 | Respectfully submitted,<br><br>ADRIAN ARRINGTON, DEREK OWENS, ANGELICA PALACIOS, and KYLE SOLOMON, individually and on behalf of all others similarly situated<br><br>By: /s/ Steve W. Berman<br>　　　　Steve W. Berman<br>*steve@hbsslaw.com*<br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>1918 Eighth Avenue, Suite 3300<br>Seattle, WA  98101<br>206.623.7292<br>Fax: 206.623.0594<br><br>By: /s/ Joseph J. Siprut<br>Joseph J. Siprut<br>*jsiprut@siprut.com*<br>Aleksandra M. S. Vold<br>*avold@siprut.com*<br>SIPRUT PC<br>17 North State Street<br>Suite 1600<br>Chicago, IL  60602<br>312.236.0000<br>Fax: 312.878.1342<br><br>Elizabeth A. Fegan<br>*beth@hbsslaw.com*<br>Daniel J. Kurowski<br>*dank@hbsslaw.com*<br>Thomas Ahlering<br>*toma@hbsslaw.com*<br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>1144 W. Lake Street, Suite 400<br>Oak Park, IL  60301<br>708.628.4949<br>Fax: 708.628.4950<br><br>*Interim Plaintiffs' Co-Lead Class Counsel* |

- 16 -

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on July 19, 2013 a true and correct copy of the foregoing document was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

By: /s/ Steve W. Berman
Steve W. Berman