IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANK MOORE and ANTHONY NICHOLS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs-Proposed Intervenors, <br><br> v. <br><br> ADRIAN ARRINGTON, DEREK OWNERS, ANGELICA PALCIOS, and KYLE SOLOMON, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, <br><br> Defendant. | Case No: 11-cv-06356 <br><br> Hon. John Z. Lee <br><br> Magistrate Judge Brown |

**MOTION TO INTERVENE**

I.  **INTRODUCTION**

From the moment this case was filed right up until three weeks ago, this litigation made clear to anyone following it that the proposed class representatives were seeking money damages—including for concussions and concussion-related symptoms *already suffered* by NCAA athletes. Indeed, proposed class counsel's public statements made throughout the life of the lawsuit made the point emphatically: getting money to former NCAA players for their past medical expenses and other damages was central to the case.

This held true even after proposed class counsel moved for class certification seeking only medical monitoring for future medical testing, a handful of NCAA policy changes, and the certification of a "core issues" class to answer certain questions about the NCAA's liability. (Dkt. 175.) As reported in *The Chicago Daily Law Bulletin* mere days after the motion was filed, "[Proposed class counsel] Siprut said he expects the NCAA to counter his motion, which at this time does not seek damages. A damages class would be certified later, he said."[1]

Three weeks ago, however, proposed class counsel reversed course and made clear that damages claims were ***not*** going to be on the table at the Parties' upcoming mediation. Thus, despite telling putative class members for three years that money for the concussions they suffered was going to be recovered, NCAA athletes who've already incurred out of pocket losses for medical bills, like the proposed intervenors Frank Moore and Anthony Nichols ("Intervenors"), won't receive any compensation for their losses.

As a result, and given the Seventh Circuit's express instruction that intervention be granted freely to putative class members, *Robert F. Booth Trust v. Crowley*, 687 F.3d 314, 318

---

[1] *See* URL http://www.siprut.com/assets/Chicago%20Daily%20Law%20Bulletin %20Concussion%20Article.pdf. (Last visited October 26, 2013).

1

(7th Cir. 2012), this Court should grant the instant motion and allow Moore and Nichols to intervene so that they may pursue the case, take discovery, and otherwise litigate their claims for medical expenses and other damages on behalf of themselves and similarly situated athletes.

## II. BACKGROUND FACTS

The instant application is supported by the following facts, as well as the allegations set forth in the attached pleading required under Rule 24, which are expressly incorporated as if set forth fully herein. (*See* Proposed Complaint, attached as Exhibit A.)

### A. Intervenors are each members of the putative Class.

Intervenors are both members of the proposed class who have incurred damages as a result of concussions they suffered while playing college football. First, Intervenor Frank Moore played NCAA football for the University of Pittsburgh from 1994 – 1997. (Intervenor Compl. ¶ 35.) He sustained several concussions while playing and has since experienced symptoms consistent with concussion-related trauma, including severe depression for which he has sought medical attention. *Id*. at 36. Similarly, Intervenor Anthony ("Tony") Nichols, a citizen of California, played college football at San Diego State University from 1989 to 1992 where he sustained several concussions. (Intervenor Compl. ¶¶ 40-41.) Since he stopped playing football, MRIs and CAT scans have revealed several concussion-related conditions. (*Id*. at ¶¶ 43-46).

### B. September 2011: The Initial Complaint and Early Press Coverage Make Clear That The Lawsuit Seeks Money Damages for Player Injuries.

When first filed on September 12, 2011, the complaint made clear that this case was about more than policy changes and future medical expenses. (Dkt. 1.) Indeed, the initial complaint specifically prayed for "past medical expenses" (Compl. ¶ 52), lost earning and "earnings capacity" (Compl. ¶ 53), "damages" (Compl. ¶ 54), and "compensatory damages, the amount of which is to be determined at trial" (Compl. "Prayer for Relief"). Likewise, Proposed

2

class counsel's public statements at that time made clear that damages were being pursued. On September 16, 2011, for example, ESPN.go.com reported that, "[Arrington is] *seeking unspecified monetary damages* and changes in policy including the establishment of a long-term medical monitoring program for injured athletes and new concussion guidelines for schools and coaches." (*See* "Sept. 16, 2011 Ex-player Adrian Arrington suing NCAA")(emphasis added.)[2] Hence, there was little question at the start of the case that damages were being pursued.

### C. The First Amended Complaint Also Sought Damages for Injuries Suffered.

On November 18, 2011, proposed class representatives filed their First Amended Complaint ("FAC") which, like the initial pleading, set forth negligence claims (FAC ¶¶ 132-40) and sought compensatory damages (FAC Prayer for Relief.) The FAC also added a claim for Unjust Enrichment. (FAC ¶¶ 147-49.) As before, proposed class counsel publicly claimed that money damages were being pursued. In a speech to the Chicago Bar Association in June 2012, attorney Siprut, explained "[W]e want reimbursement of medical expenses for the student athletes *who've already gone out of pocket before*…"[3] Likewise, as reported on the front page of the *Chicago-Tribune*, attorney "***Siprut is seeking unspecified financial damages***, as well as the establishment of an NCAA trust fund to pay [medical monitoring]."[4]

### D. On March 11, 2013, Proposed Class Counsel Files The Second Amended Complaint Which Continues to Seek Money Damages.

On March 11, 2013, proposed class representatives filed the SAC, which re-ordered the causes of action and modified certain allegations. (Dkt. 135.) The SAC retained the negligence claim (SAC ¶ 275-83), including the allegation that "[a]s a result of the foregoing, the Plaintiffs

---

[2] See URL http://espn.go.com/college-football/story/_/id/6978479/former-eastern-illinois-panther-adrian-arrington-suing-ncaa-concussion-rules (Last visited Oct. 16, 2013).
[3] *See* URL http://www.chicagobar.org/siprut/ (Last visited Oct. 28, 2013) (Emphasis added).
[4] *See* http://www.siprut.com/NCAAChicagoTribune.pdf (Last visited Oct. 24, 2013).

3

and Class have suffered damages and will in the future suffer damages caused by the misconduct of the Defendant." (SAC ¶ 281; FAC ¶ 138; Compl. ¶ 55.) And like the FAC, the SAC included an "Unjust Enrichment" claim—although the amended allegations expanded the medical expenses sought to include those "incurred and to be incurred" as opposed to merely those "whose treatment is required post college career." (*Cf.* FAC ¶ 149 *with* SAC ¶ 274.) The SAC sought Rule 23(b)(3) certification (SAC ¶ 234)[5] and requested "An award of compensatory damages, the amount of which is to be determined at trial." [6] (SAC "Prayer for Relief," C.)

As with their prior filings, proposed class counsel's public statements affirmed that money damages were still being pursued. For example, in an April 11, 2013, "Q&A session" hosted by the League of Fans, an activist group founded by Ralph Nader "to encourage social & civic responsibility in sports industry & culture," when asked "If you're successful with your lawsuit, what do you think will happen?", attorney Siprut answered that "If the injury was caused by what happened on the field, the NCAA should pay for that."[7]

**E.       July 19, 2013: Proposed Class Representatives Move for Certification.**

On July 19, 2013, proposed class representatives filed their Motion for Class Certification, primarily seeking certification on claims for policy changes and medical

---

[5] The SAC did not contain any indication that damages were only being sought in conjunction with a "core issues" class under Rule 23(c)(4). Indeed, apart from the certification motion, no pleading makes reference to any "core issues" class whatsoever.
[6] The SAC indicated with respect to the breach of contract claims (Counts I – III) that "Plaintiffs seek damages for their own injuries." (SAC ¶¶ 253, 258, 265.) No similar statement appeared in the claims for Fraud, Negligence, or Unjust Enrichment, nor was it clear that these allegations meant the proposed representatives were forgoing the rest of the class members' damages claims.
[7] *See* URL http://www.siprut.com/assets/leagueoffans.org-2013-04-11-qs-as-with-leading-sports-reformers-joseph-siprut.pdf. (Last visited Oct. 27, 2013).

4

monitoring for *future* medical testing.[8] (Mot. for Cert. (Dkt. 175)). With respect to damages, however—and departing from the public strategy up until that point—the motion asked that the Court certify only a "core-issues" class under Rule 23(b)(3) and 23(c)(4). (Mot. for Cert. 30–35.) Thus, it appeared from the motion that damages were potentially no longer being pursued.

Proposed class counsel's public statements at the time of filing, however, continued to promise certification of a damages class. On July 23, 2013, just four days following the motion, the *Chicago Daily Law Bulletin* reported that, "Siprut said he expects the NCAA to counter his motion, which at this time does not seek damages. A damages class would be certified later, he said."[9] Likewise, a cover story in *USA Today* on July 26, 2013, failed to indicate that monetary relief were no longer being sought.[10] Thus, it was unclear from the certification motion the extent to which any claims were being relinquished.

### F. Intervenors' Counsel Learns of the Mediation and Promptly Reaches Out to Proposed Class Counsel.

On August 15, 2013, the Parties notified the Court that they were proceeding to mediation. (Dkt. 186.) Intervenors' counsel learned of the proceedings and reached out to proposed class counsel to understand the scope of the proceedings. Through back and forth communications, proposed class counsel repeatedly made clear that the mediation was solely focused on medical monitoring and that personal injury claims were excluded.

### G. Two Other Federal Cases Have Been Filed Seeking Medical Monitoring.

Two other lawsuits have been recently filed. On September 3, 2013, plaintiffs in the Eastern District of Tennessee filed a putative class action seeking only medical monitoring.

---

[8] Although medical monitoring apparently covers "testing", there is no indication that it will cover Intervenors' future "treatments."
[9] *See Supra*, n. 1.
[10] *See* http://www.siprut.com/assets/NCAA%20USA%20Today.pdf (Last visited Oct. 27, 2013).

5

*Walker et al. v. NCAA*, 1:13-cv-00293-CLC-WBC. On September 9, 2013, Proposed class representatives in this case filed a motion to intervene in *Walker* arguing the matters are identical, (*Walker* Dkt. 7) though *Walker* appears to cover all former NCAA football players, as opposed to those only going back to 2008. A motion for consolidation is likewise pending before the JPML for argument on December 5, 2013, and the *Walker* plaintiffs recently announced that they will be mediating with Judge Layne Phillips (the mediator in this case) in February 2014.

Additionally, on October 1, 2013, Plaintiffs John Durocher and Darin Harris filed suit in the Southern District of Indiana against the NCAA and an additional defendant, Riddell—the maker of college football helmets. *Durocher et al. v. NCAA*, 1:13-cv-01570-SEB-DML. Apart from the allegations against Riddell, *Durocher* contains cut-and-paste allegations from the *Arrington* complaints. No certification motion or other substantive activity has occurred.

Based on these facts, and as explained below, the existing plaintiffs no longer represent Intervenors' damages claims, and intervention should be granted.

**III.   ARGUMENT**

This Court should allow intervention, which is governed by Federal Rule 24, and is "the proper mechanism for nonparties to protect interests that may be adversely affected by a trial court's judgment." *Felzen v. Andreas*, 134 F.3d 873, 874 (7th Cir.1998), *petition for cert. granted in part*, 524 U.S. 980, 119 S.Ct. 29, 141 L.Ed.2d 789 (1998); *In re Discovery Zone Securities Litigation*, 181 F.R.D. 582, 589 (N.D. Ill. 1998). "In the class action context, absent (or unnamed) class members generally can intervene if the class representatives are no longer adequately representing their interests." *In re Discovery Zone Securities Litigation*, 181 F.R.D. at 589 (stating that "analyzing [Rule 24's] requirements is much simpler if the proposed intervener is a class member; for example, an absent class member would have little difficulty showing an

6

interest in the action (Rule 24(a)) or a common question of law or fact with the class (Rule 24(b))".) (*citing* HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 16.06 –16.07, at 16–35, 16–39 (3d ed.1992)); *see also Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 880-81 (7th Cir. 2000). When considering intervention, courts "accept as true the nonconclusory allegations of the motion" *Reich v. ABC/York–Estes Corp.*, 64 F.3d 316, 321 (7th Cir.1995), and the motion shouldn't be dismissed "unless it appears to a certainty that the intervener is not entitled to relief under any set of facts…." *Id*. at 321 (*citing Lake Investors Dev. Group v. Egidi Dev. Group*, 715 F.2d 1256, 1258 (7th Cir.1983)).

As demonstrated below, this Court should grant intervention for three reasons. First, the application is timely, being filed three weeks after proposed class counsel confirmed that pursuit of personal injury damages had been abandoned. Second, the remaining requirements for intervention as a matter of right under Rule 24(a) are satisfied: Intervenors are class members with an "interest" in the subject of the action, disposition of the action as a practical matter will impede their ability to protect those interests, and the existing parties by their own admission no longer adequately represent them. And third, even if intervention as a matter of right were unavailable, all requirements for permissive intervention under Rule 24(b) are met. Accordingly, the application should be granted.

    A.    **The Instant Application To Intervene Is Timely.**

Both intervention as of right as well as permissive intervention require that the application be "timely." Fed. R. Civ. P. 24(a) and (b); *Zurich Capital Markets Inc. v. Coglianese*, 236 F.R.D. 379, 383 (N.D. Ill. 2006). "Whether a motion to intervene was made in a timely fashion is determined by reference to the totality of the circumstances." *Shea v. Angulo,* 19 F.3d 343, 348 (7th Cir.1994) (*citing Schultz v. Connery,* 863 F.2d 551, 553 (7th Cir.1988)).

7

There can be little doubt that the instant application has been timely filed. It is well settled that "only when the class members suspect that the representative is not acting in their best interests is there a need to intervene. *This means that delay must be measured from the time the would-be intervenors learned (or should have known) of the representative's shortcomings.*" *Crawford, Inc.*, 201 F.3d at 880-81 (emphasis added) (*citing United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977)); *see also Blau v. Harrison*, 04 C 6592, 2006 WL 644016 at *2 (N.D. Ill. Mar. 8, 2006) (intervention is timely where it is sought within a "reasonable amount of time after discovering that class counsel [i]s no longer litigating or negotiating on" the intervenors' behalves) (*quoting In re Discovery Zone*, 181 F.R.D. at 594).

In the class context, this most often arises after a settlement has been filed, as "[u]nnamed members of the class rarely will suspect a shortfall in the adequacy of representation before learning of the terms of a (potentially inadequate) settlement or problems in the class definition—and given the possibility of opt-out, even that may not occasion intervention." *Crawford*, 201 F.3d at 880-81; *see also Robert F. Booth Trust v. Crowley*, 687 F.3d 314, 318 (7th Cir. 2012) ("In *Crawford*...we told district judges to grant intervention freely to persons who want to contest settlements in class actions under Fed. R. Civ. P. 23….")

The instant Application is being sought <u>ahead</u> of any deficient settlement, as it is now apparent that the putative class representatives have abandoned their pursuit of damages for the Proposed Intervernors' injuries—relief they had made clear from the beginning of the case, and throughout repeated filings, that was central to the litigation. As set forth in Section II, *supra*, the three complaints filed in the case (Dkts. 1, 24 and 135) all included claims for damages, and Proposed class counsel's statements made throughout the litigation repeatedly reinforced the public's perception that damages were being sought.

8

It was not until the Motion for Class Certification was filed on July 19, 2013, that proposed class representatives gave any indication they were potentially foregoing personal injury damages. While reviewing the docket to see how the certification briefing unfolded for further clues, Intervenors' counsel noticed that the Parties were proceeding to mediation. (Dkt 186.) Intervenors' counsel promptly reached out to proposed class counsel asking for clarification regarding the impact of the mediation on the applicants' claims. (See Edelson Letter of Oct 4, 2013.) In emails sent between October 4th-6th, putative class counsel, Steve Berman, confirmed that the personal injury claims wouldn't be on the table at the mediation.

Hence, Intervenors need not wait until a settlement is filed—it is already evident that the existing plaintiffs no longer represent their interests. As this application follows proposed class counsel's October 6, 2013 email by only three weeks, the Court should have little trouble finding the instant application timely under both Rule 24(a) and (b).

As explained next, Intervenors also satisfy the remaining requirements for intervention.

**B.      Intervention Is Allowable As A Matter Of Right Under Rule 24(a).**

Rule 24(a) governs intervention as a matter of right and establishes four requirements: (1) an "interest" in the property or transaction which is the subject of the action, (2) disposition of the action as a practical matter may impede or impair the applicant's ability to protect that interest, (3) timeliness, and (4) no existing party adequately represents the applicant's interest. *In re Discovery Zone Securities Litigation*, 181 F.R.D. at 589 (*citing Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir.1995); *Reich,* 64 F.3d at 321.

Intervenors meet each of these requirements here. As explained above, the application is timely. *See* Section III.A., *supra*. Furthermore, Intervenors have an interest in the subject of this action, the disposition of this case would impede their ability to protect those interests, and none

9

of the existing parties will adequately represent those interests.

### 1. Intervenors have an interest in the litigation—their personal injury claims reflect those set forth in the SAC.

As Judge Castillo explained in *In re Discovery Zone*, "an absent class member would have little difficulty showing an interest in the action…." 181 F.R.D. at 589. The Intervenors unquestionably fall within the class definition, having played NCAA football and suffered concussions or concussion-like symptoms. (*See* SAC ¶ 227.)[11] This case and their claims are essentially identical—absent the fact that Intervenors' damages claims (see Section II, *supra*) are supposedly no longer represented in the current litigation.

Accordingly, the Parties can hardly contest that Intervenors have an interest in the litigation that satisfies the first requirement for intervention as a matter of right.

### 2. The disposition of this case will impede the Intervenors' ability to protect their interests.

The second element for intervention requires that resolution of the case impair Intervenors' ability to protect their interests. As proposed class counsel argued in their own intervention papers filed in the *Walker* case, "the burden to establish impairment of an applicant's ability to protect such an interest in the absence of intervention is 'minimal.'" (Mot. to Intervene, *Walker* Dkt. 7, 6.) (citations omitted.)

Such a minimal showing is made here. If the case doesn't settle and *Arrington* prevails on class certification and at trial, Intervenors wouldn't be eligible to receive *any* money for the medical bills and other damages they've already incurred. Rather, under the paradigm contemplated by the certification papers, Intervenors at best would receive answers to

---

[11] Intervenors are left to presume that the definition of the class to be certified is identical to the definition contained in the SAC. Nowhere does the Motion for Class Certification include the class definition. Rather, in the discussion of Rule 23(a)(1) numerosity proposed class representatives make reference to a "Proffer" that is not publicly available.

amorphous "core questions" about the NCAA's liability, such as: (1) the medical consensus about concussion-management best practices, (2) whether the NCAA owed a duty to each class member, and (3) whether the NCAA breached that duty. (Mot. Class Cert. 33.) After waiting however long for the answers, class members like Intervenors who have already incurred money damages—including doctors' bills and other losses—would then be required to file separate individual lawsuits seeking compensation, assuming they can overcome statutes of limitations issues and other defenses. (*Id.*)

The potential for a beneficial resolution to arise from the mediation is even worse, as proposed class counsel has made clear that the case is being mediated without regard for the personal injury claims. (Oct. 6, 2013 Email.) Absent the prospect of negotiating such claims, the mediation forecloses the possibility that even these supposed "core issues" will be resolved.[12] Thus, even if the mediation were "successful," NCAA athletes who've already suffered damages—all of whom were repeatedly assured up until a few weeks ago they the case was representative of their interests—will receive absolutely nothing.

That proposed class counsel may have abandoned the claims for damages so as to strategically avoid having to litigate certain issues doesn't change the result. The question is whether Intervenors have shown that resolving the case without allowing intervention will impair Intervenors' ability to protect their interests, which they have undoubtedly have. Furthermore, there was no need to abandon the class's claims for damages—courts regularly consider and certify damages classes seeking compensation for injuries particularly where, as here, the complaint challenges common practices or conduct. *See, e.g.*, *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472–73 (5th Cir.1986) (personal injury class of asbestos exposure victims

---

[12] Indeed, that proposed class counsel's proposed solution was to exclude all of Intervenors' clients from any settlement by name strongly suggests such relief wasn't being pursued.

11

certified); *In re Diamond Shamrock Chemicals Co.*, 725 F.2d 858, 860–61 (2d Cir. 1984), *cert. denied*, 465 U.S. 1067 (1984) (certifying class of victims exposed to agent orange); *McQuilken v. A & R Development Corp.*, 576 F.Supp. 1023, 1028–1032 (E.D. Pa.1983) (class of landowners harmed by common construction activity certified); *In re Three Mile Island Litigation*, 87 F.R.D. 433, 438–40 (M.D. Pa.1980) (class of residents suffering economic harm from nuclear accident certified); *Ouellette v. International Paper Co.*, 86 F.R.D. 476, 479–84 (D.Vt. 1980) (class of landowners threatened by water pollution certified); *Pruitt v. Allied Chemical Corp.*, 85 F.R.D. 100, 113 (E.D. Va. 1980) (class of industry representatives damaged by pollution certified); *Bentkowski v. Marfuerza Compania Maritima*, S.A., 70 F.R.D. 401, 404–06 (E.D. Pa.1976) (class of injured cruise passengers certified); *Petition of Gabel*, 350 F.Supp. 624, 630–31 (C.D. Cal.1972) (certifying class of estates of passengers killed in air crash); *American Trading and Production Corp. v. Fishbach & Moore, Inc.,* 47 F.R.D. 155, 156–58 (N.D. Ill. 1969) (class of fire victims certified); *Biechele v. Norfolk & Western Railway*, 309 F.Supp. 354, 355 (N.D. Ohio 1969) (class of residents impacted by coal dust pollution certified).[13]

At least one court has specifically recognized that class members with claims for damages already suffered may intervene where the existing parties have limited their claims to medical monitoring relief. *Stern v. Chemtall Inc.,* 617 S.E.2d 876, 886 (2005) (Supreme Court of West Virginia allowing class of individuals damaged by exposure to hazardous substance to

---

[13] Indeed, any supposed individual damages issues could readily be resolved through statistical sampling. *See Long v. Trans World Airlines, Inc.*, 761 F. Supp. 1320, 1324 (N.D. Ill. 1991) (citing 2 NEWBERG, CLASS ACTIONS 332 (1985)("In appropriate circumstances, various individual issues can be eliminated by use of classwide proof of aggregate damages and by the employment of methods for distribution of aggregate recoveries by means other than individual proofs of damages suffered.")); *see also Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc*. *et al.*, 133 F. Supp. 2d 162, 169 ("Statistically based proof is particularly appropriate in the realm of mass tort litigation where the universe to be sampled is so large."); *Hilao v. Estate of Marcos*, 103 F.3d 767 (1996); *see also* Laurens Walker and John Monahan, *Sampling Liability*, 85 Va. L. Rev. 329 (1999).

12

intervene in class action seeking only medical monitoring where cases were similar and discovery would be duplicative). Thus, and contrary to any assertion that the negligence claims couldn't have been certified, a damages class could and should have been pursued beyond one limited to "core-issues". (Mot. for Class Cert. 30-35.)

In any event, the reduction of such claims to a core issues class, coupled with an acknowledgement that the injury claims will not be negotiated at the mediation, makes clear that resolving this case absent intervention impedes the Intervenors' ability to protect themselves. Accordingly, the second element under Rule 24(a) is satisfied.

### 3. The existing parties have made clear that they have abandoned the applicants' claims and will not represent their interests.

The final prong for intervening as a matter of right requires that no existing party adequately represent the Intervenors' interests. That is met here. Not to belabor the point, but in a departure from their strategy pursued since the beginning of the case that had sought damages, proposed class counsel confirmed that the mediation was limited to medical monitoring. Such assurances plainly demonstrate that the existing parties are "no longer litigating or negotiating on" the intervenors' behalves, *In re Discovery Zone*, 181 F.R.D. at 594, even to the extent a "core issues" class was ostensibly being pursued. Consequently, the Court should grant the application under Rule 24(a).

### C. Even if Intervention As of Right Were Unavailable, This Court Should Still Permit Petitioners To Intervene In Accordance With Rule 24(b).

Under Rule 24(b) "[p]ermissive intervention is proper if a common question of law or fact exists, the petition to intervene was timely made, and there is an independent basis for the court's jurisdiction." *Barrett v. Fox & Grove, Chartered*, 01 C 5910, 2003 WL 1702250 (N.D. Ill. Mar. 28, 2003) (*citing Sec. Ins. Co. of Hartford*, 69 F.3d at 1381; *Blau*, 04 C 6592, 2006 WL

13

644016 at *3 (the court has discretionary authority to permit a nonparty to intervene when "an applicant's claim or defense and the main action have a question of law or fact in common."). Otherwise it is discretionary. *Keith v. Daley,* 764 F.2d 1265, 1272 (7th Cir.1985). Again, as explained above, the application is timely. Further, the Intervenors, as members of the putative class, share common issues of law and fact with the claims asserted in the action, and jurisdiction exists under the Class Action Fairness Act to proceed before this Court. As a result, the Court shouldn't hesitate to allow intervention.

### 1. The Applicants share issues of law and fact with the named plaintiffs.

As explained above, "analyzing [Rule 24's] requirements is much simpler if the proposed intervener is a class member; for example, an absent class member would have little difficulty showing….a common question of law or fact with the class (Rule 24(b))." *In re Discovery Zone*, 181 F.R.D. at 589. Here, nearly all of the questions of law and fact are common. Intervenors fall under the class definition set forth in the SAC. Their case similarly challenges the NCAA's conduct with respect to its failures to notify and safeguard students regarding the risks of concussions. The legal theories are essentially identical—the exception being that the named plaintiffs have foregone their pursuit of personal injury damages with respect to anyone other than themselves. Discovery in the cases would significantly overlap, as would the evidence ultimately presented. Hence, and consistent with Judge Castillo's reasoning in *In re Discovery Zone*, 181 F.R.D. at 589, Intervenors share common issues to warrant permissive intervention.

### 2. This Court has CAFA jurisdiction over the Intervenors' claims.

Intervenors likewise meet the requirement of independent jurisdiction. The Intervenors seek to represent over 100 class members with aggregate damages exceeding $5,000,000, at least one Intervenor is a citizen of a state different from the NCAA (Moore is a citizen of Connecticut

14

and Nichols is domiciled in California), and none of the exceptions under 28 U.S.C. § 1332 applies. Therefore, jurisdiction cannot be seriously questioned.

### 3. The named parties have already abdicated their control over Intervenors' claims, and intervention won't result in prejudice.

Finally, any objection based on supposed prejudice to the proposed class representatives cannot be sustained. As described above, proposed class counsel and the proposed representatives only recently abandoned the Intervenors' claims for class damages after years of filings and public statements claiming such damages were being pursued. Thus, any prejudice the named parties could invent is a by-product of their own strategy and decisions. Nor can the NCAA claim prejudice by the intervention. Up until a few weeks ago, the NCAA was faced with defending the very claims the Intervenors seek to pursue. Having defended against such claims for the past two years, the NCAA cannot pretend it would be inconvenienced or prejudiced.

As a result, Intervenors are able to satisfy each of the requirements of Rule 24(b), and the Court should permit their intervention.

## IV. CONCLUSION

Courts in the Seventh Circuit are required to freely allow intervention by absent class members (*See Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 880-81 (7th Cir. 2000)), and this Court should have little difficulty granting the instant application.

WHEREFORE, the Intervenors, Frank Moore and Anthony Nichols respectfully request that this Honorable Court grant the instant application to intervene and award such additional relief as the Court deems necessary, reasonable, and just.

Dated: October 29, 2013                                        Respectfully submitted,

                                                               /s/ Steven L. Woodrow

>JAY EDELSON
>jedelson@edelson.com
>STEVEN L. WOODROW
>swoodrow@edelson.com
>EDELSON LLC
>350 N. LaSalle, Suite 1300
>Chicago, Ilinois 60654
>Telephone: (312) 589-6370
>
>*Attorneys for Plaintiffs and the Putative Class*

## CERTIFICATE OF SERVICE

I, Steven L. Woodrow, an attorney, hereby certify that on October 29, 2013, I served the above and foregoing ***Motion to Intervene***, by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system, on this the 29th day of October 2013.

/s/ Steven L. Woodrow

16