```
1                    IN THE UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF ILLINOIS
2                              EASTERN DIVISION

3    ADRIAN ARRINGTON, et al.,        )  Docket No. 11 C 6356
                                      )
4                   Plaintiffs,       )
                                      )
5           v.                        )  Chicago, Illinois
                                      )  November 5, 2013
6    NATIONAL COLLEGIATE ATHLETIC     )  9:00 o'clock a.m.
     ASSOCIATION, et al.,             )
7                                     )
                    Defendants.       )
8
                   TRANSCRIPT OF PROCEEDINGS - MOTION
9               BEFORE THE HONORABLE JOHN Z. LEE

10   APPEARANCES:

11   For the Plaintiffs:        SIPRUT PC, by
                                MR. JOSEPH J. SIPRUT
12                              17 North State Street
                                Suite 1600
13                              Chicago, Illinois 60602

14                              HAGANS BERMAN SOBOL SHAPIRO, by
                                MS. ELIZABETH A. FEGAN
15                              1144 West Lake Street
                                Suite 400
16                              Oak Park, Illinois 60301

17   For the Defendants:        LATHAM & WATKINS LLP, by
                                MS. JOHANNA MARGARET SPELLMAN
18                              MS. KATHERINE S. WALTON
                                233 South Wacker Drive
19                              Suite 5800
                                Chicago, Illinois 60606
20

21

22              ALEXANDRA ROTH, CSR, RPR
                Official Court Reporter
23              219 South Dearborn Street
                     Room 1224
24              Chicago, Illinois 60604
                  (312) 408-5038
25
```

```
 1   APPEARANCES:  (Continued)

 2   For the Intervenor:          EDELSON LLC, by
                                  MR. JAY EDELSON
 3                                MR. RAFEY BALABANIAN
                                  350 North LaSalle Street
 4                                Suite 1300
                                  Chicago, Illinois 60654
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case: 1:11-cv-06356 Document #: 198 Filed: 11/18/13 Page 2 of 18 PageID #:4543

APPEARANCES:  (Continued)

```
 1        (Proceedings had in open court:)
 2            THE CLERK:  11 C 6356, Arrington versus National
 3   Collegiate Association, for motion hearing.
 4            MR. SIPRUT:  Good morning, your Honor.  Joe Siprut on
 5   behalf of Arrington and class.
 6            MS. FEGAN:  Good afternoon -- good morning, your
 7   Honor.  Elizabeth Fegan on behalf of plaintiffs.
 8            MS. SPELLMAN:  Good morning.  Johanna Spellman and
 9   Katherine Walton on behalf of defendant NCAA.
10            MR. EDELSON:  Good morning, your Honor.  Jay Edelson
11   on behalf of proposed intervenors along with Rafey Balabanian.
12            MR. BALABANIAN:  Good morning, your Honor.
13            THE COURT:  Good morning, counsel.
14        I have reviewed the motion as well as I have also
15   received some correspondence recently from the parties with
16   regard to the mediation.  And for purposes of disclosure, I
17   have also received correspondence from the Hausfeld firm, which
18   I think was CC'd to counsel as well, with regard to their
19   thoughts either formal or informal with regard to the motion to
20   intervene and this entire process.
21        Mr. Siprut, why don't you give me some quick status on
22   where we stand at the moment.
23            MR. SIPRUT:  Last week we were in New York for
24   mediation on the case.  We presently have the MDL with fully
25   briefed motions under advisement.  We now have a motion to
```

1  intervene filed by Mr. Edelson.  So our initial position as to
2  the motion to intervene is that it's really premature
3  procedurally because until we know what the MDL panel is going
4  to do, we don't know where the case is going to go.
5       So whether there is going to be a case to intervene in
6  here will theoretically be decided by the MDL panel.  So I
7  think at a minimum, we ought to take a wait-and-see approach,
8  wait until the MDL panel issues a ruling.  And then and only
9  then we can deal with Mr. Edelson's motion to intervene here.
10      THE COURT:  What is currently pending before the MDL?
11 Has there been a final transfer order?  Or is it all
12 conditional at this point?
13      MS. FEGAN:  Your Honor, the MDL hearing is set for
14 December 5.  And we have been scheduled for oral argument on
15 that date.  We have pending obviously plaintiffs' motion to
16 transfer the matter here, objections from the Hausfeld firm in
17 Tennessee as well as a case that's been filed in Indiana, and I
18 think a third one that's in Pennsylvania.
19      We've also filed our own petition to intervene in the
20 Tennessee action to try and, you know, obviously stay that
21 matter, have it dismissed or have it transferred here under
22 statute, given that we have been pending for over two years and
23 discovery is completed and we have a pending motion for class
24 certification.
25      So from plaintiffs' perspective, as Mr. Siprut said,

1   we do believe that we should wait until after the MDL hearing
2   on December 5.  Typically the MDL panel rules within
3   approximately three weeks at this point, sometimes as little as
4   two.  Particularly given the holidays, we expect a ruling by
5   the end of December.
6         And at that point we can reconvene with all these
7   matters.  So it's not just Mr. Edelson's issue, but kind of a
8   larger global issue we have at this point about where we are
9   going to proceed and how.
10        THE COURT:  Okay.  So with regard to -- I am just
11   trying to understand exactly what's before the MDL.  Has there
12   been a -- I haven't seen it if there has been.  Has there been
13   a final order of transfer to the MDL?  No, right?  Right now
14   it's been conditionally transferred?
15        MS. FEGAN:  Not --
16        MR. SIPRUT:  Neither.
17        MS. FEGAN:  -- even conditionally.
18        MR. SIPRUT:  It's at the earlier stage, the proceeding
19   step, which is we're going --
20        THE COURT:  You are trying to get it together.
21        MR. SIPRUT:  Exactly.
22        MS. FEGAN:  It's fully briefed and set for hearing.
23        THE COURT:  Okay.  Well, I have reviewed the motion to
24   intervene.  And let me go ahead and hear from the potential
25   intervenors.

1           MR. EDELSON: Thank you, your Honor.
2           I don't want to belabor the brief that we wrote.
3    Basically we've been tracking this case and along with the
4    public. And we always understood it to be about personal
5    injury claims and additional medical monitoring claims. When
6    we followed up with Ms. Fegan's partner, Steve Berman, to ask
7    him about the status of the mediation, he made it clear that
8    they jettisoned the personal injury claims. They have now made
9    public statements to the press at CBS Sports saying that the
10   personal injury claims never had any chance to succeed on a
11   class-wide basis.
12          We believe that if they are not pursuing those claims
13   on behalf of the class and if they are now taking an
14   antagonistic position to the class they were -- that they were
15   appointed to represent, interimly, someone has to step into
16   that. And the idea that they're going to go through at the
17   mediation and potentially impact these important claims, which
18   were always in our view the core of the case, is something that
19   is not appropriate.
20          The idea also that Ms. Fegan suggested that we should
21   wait until after the MDL decides everything before we have an
22   opportunity to participate in the lawsuit is something which I
23   don't think is supported by case law. We are allowed to file a
24   complaint. We don't have to move to intervene. We are doing
25   that because we think it's the most efficient thing to do to

1  get the issue in front of your Honor who's already issued a
2  decision on interim lead.  We're trying to do this in the most
3  responsible way we can.
4            If your Honor were to deny that, we're certainly free
5  to file our own complaint.  And then at that point we can be
6  heard as part of the MDL, and our clients have a stake in this.
7  And they could state their position while -- where the Court --
8  where the case ought to go forward.
9            During that time, our -- our clients ought to be able
10 to take positions with regard to the case.  For example, it
11 seems like Ms. Fegan suggested discovery is now done.  We would
12 like to understand if discovery was ever done into the personal
13 injury claims.  If not, someone ought to be doing that.
14           So I -- I just don't think there is any precedent or
15 reason behind the idea that we should wait a few months before
16 our clients, who may be the only people willing to represent
17 the core claims -- you know, before they can do so.
18           THE COURT:  Well, I think that before we get into the
19 mediation or to the extent that the parties are comfortable
20 doing so, I think Ms. Fegan's point -- I took Ms. Fegan's point
21 to mean that perhaps it might be prudent to wait to see where
22 the case finally ends up, to kind of figure it all out because
23 if you are trying to intervene here, they are trying to
24 intervene in Tennessee, we got correspondence from Tennessee
25 counsel basically saying, you know, the case should stay in

1    Tennessee and Tennessee is the lead case -- I mean, it's all
2    across the map.
3           And so to the extent if the MDL in its wisdom decides
4    to consolidate everything and send it to one Judge, then
5    certainly it may be prudent to wait to allow that Judge,
6    whether it's me or someone else, to make that determination to
7    figure out how this case is going to proceed.  Whether or not,
8    for example, there will be different classes?  Will there be
9    subclasses perhaps?  And how exactly that Judge wants to
10   address the motion and class certification issues.
11          The question in my mind is really a matter of
12   prejudice, right?  It's what prejudice would the potential
13   intervenor suffer if we were to wait until the MDL panel
14   decides on the motions that are pending before it.  And I guess
15   that goes to some extent -- that segues to the mediation.
16          But my understanding at least reviewing the motion for
17   class certification that was filed was that the motion for
18   class certification seeks to certify a class with regard to
19   particular issues, really a 23(b)(2) class, of particular
20   issues, and ask the Court to preserve individual claims as to
21   damages, allowing that to proceed either on an individual basis
22   or on a separate class basis.  I think the intervenor's point
23   is, well, then you should have said that in your complaint as
24   opposed to just saying it in your motion.
25          But what sort of prejudice would your clients suffer,

1  Mr. Edelman, if in fact that's how it proceeded?
2              MR. EDELSON:  Quick clarification, your Honor.
3  They -- that's how we read their motion too.  When they
4  clarified and we got this in e-mails and now public statements,
5  they said, no, we can't get a class certified on personal jury
6  claim.  We are not proceeding on that basis.
7              So we always understood that they were going to try to
8  get a class certified later on.  And now they said, no, that's
9  done.
10             There are two forms of prejudice.  First of all,
11 statute of limitations, which should have been tolled.  If they
12 were doing their job and they had not abandoned the claims, the
13 statute of limitations would be tolled.  The second you file a
14 class action it's tolled as to all individuals.
15             Now that they have abandoned that, the statute is
16 running, even though nobody in the class understands that.
17 That's the first -- that's the first and most important form of
18 prejudice.
19             The second is, we don't know what's happening at the
20 mediation.  The -- there is very concerning to us when you got
21 lead counsel making public statements going after the class'
22 core claims.  We don't -- I don't want to make any accusations
23 because I know Mr. Berman is a fine lawyer, and I have the
24 utmost respect for Mr. Siprut and Ms. Fegan as well.
25             But it's disconcerting out there.  We don't know what

1  happened in the mediation, what's going to happen at the
2  mediation.  And that could further -- we assume that -- that
3  the reason all of this is happening like that is because it's
4  going to compromise people's claims.
5         THE COURT:  Ms. Fegan, why don't you address some --
6         MS. FEGAN:  Sure.
7         THE COURT:  -- of those points.
8         MS. FEGAN:  So there is a couple things here to
9  address.  First, I think it's black letter law that
10 typically -- and perhaps what Mr. Edelson is confused about is
11 typically mass torts are not certified as class actions.  They
12 might be MDL'd and grouped together and proceed along some type
13 of group basis.  But it is not under, for example, Rule
14 23(b)(3).
15        We have always in our complaint and in pleadings
16 before this Court always talked about either bringing a medical
17 monitoring claim separately or as a prayer for relief under a
18 negligence claim.  That's because states sometimes differ.
19 Some states see medical monitoring as relief for negligence,
20 and some states they allow medical monitoring claims to proceed
21 separately.  Obviously we also had a breach of contract claim,
22 which now has turned into our core issues subclass on behalf of
23 the 51 states.
24        So first, there is no prejudice here.  Second, Mr.
25 Edelson, as he admitted, could file a complaint today, filed a

1 complaint yesterday. If he has personal injury claims, he
2 should file those and protect his clients or the class he
3 purports to represent.
4 And there is two final two things here. If this case
5 proceeds forward, whether successfully at mediation or
6 otherwise, he could file his separate complaint, attempt to be
7 MDL'd or file a complaint in this district and seek
8 consolidation or transfer to your Honor. But he's trying to
9 make an end run around the statutory rules that do provide for
10 determining whether there are common issues.
11 Second, if this case were to settle, and if he were
12 unhappy with the settlement or thought we were somehow
13 prejudicing his clients, Rule 23 specifically provides for the
14 opportunity for class members to either object -- and there
15 will be a whole objection proceeding that the Hausfeld firm and
16 others, Mr. Edelson, can certainly participate in, to
17 participate in the settlement. Or second, they can opt out.
18 They can opt out of any prejudicial terms they believe exist
19 and separately pursue those claims.
20 So there is an orderly way to proceed both in the
21 first instance, with consolidation transfer and for Courts to
22 determine whether there are common issues. And second of all,
23 if there is a settlement, which there is not as of today, to
24 determine whether they want to object or opt out to that
25 settlement.

1               So there is no prejudice here.
2               THE COURT:  Let me ask you this:  What about Mr.
3    Edelson's point that the plaintiff in this case has, for lack
4    of -- using his words, abandoned the individual money damages
5    claim?  Is that an accurate assessment of your current
6    position?
7               MS. FEGAN:  No.  Well, let me say this:  We don't
8    believe that we ever brought class personal injury claims.  So
9    there was nothing to abandon.  We have always made clear that
10   there were several things that the NCAA we believe failed to do
11   that resulted in inaccurate return-to-play guidelines or no
12   return-to-play guidelines that resulted in injury, and that
13   these clients and student athletes needed medical monitoring to
14   determine whether and to what extent they suffered any brain
15   injuries.
16              So in some respects, if the Court was aware of the NFL
17   litigation, this case has always been different because there
18   has only been four class representatives that purport to
19   represent the student athletes and bring these class claims
20   separately when you see the NFL litigation references in the
21   settlement there.  There is, you know, thousands or hundreds of
22   players that have filed individual personal injury claims that
23   were grouped together in a mass tort context.
24              So, you know, it's not -- and I think that might be
25   part of the confusion or misperception that's occurring now.

1     THE COURT: In the second amended complaint, second
2 consolidated amended complaint, there is a prayer for relief
3 for compensatory damages. What does that address?
4     MS. FEGAN: That addressed originally our breach of
5 contract claim. And as we went through and analyzed those
6 claims, we determined that we were more likely to obtain
7 certification of a liability class by bringing basically the
8 duty and breach, the core issues, under a breach of contract
9 claim and leave the question of individual damages for some
10 type of individual proceeding. And so you see that addressed
11 throughout core issue, subclass in our motion.
12     THE COURT: Okay. Mr. Edelson, I'll provide you with
13 a brief response if you want to respond to that.
14     MR. EDELSON: Yes, I guess one question I have is,
15 what is the prejudice to them? It's clear that we -- we have
16 already given you papers showing all their public statements
17 and statements in the pleadings, where we understood as your
18 Honor seemed to understand too they were pursuing personal
19 injury claims just at some later point. So it's interesting to
20 hear Ms. Fegan say, oh, no, forget what we said to everybody
21 else who's been watching the case. That's not true.
22     But the real question I have is, what's the prejudice
23 to them? If they are not interested in pursuing that part of
24 the case, and the Hausfeld firm isn't either, what is the
25 prejudice for us coming in and pursuing that? We're all

1 representing the same people. You would think that they would
2 say, terrific. We think that you're -- you're going to lose on
3 this case. I prefer that they say that privately instead of
4 publicly. But that's okay. They can have different views.
5     And your Honor is going to decide whether we can get a
6 class certified or not. But why not let us come in and let's
7 do the work.
8     THE COURT: But also, Mr. Edelson, as I seem to
9 recall, the class is also different, isn't it? Aren't you also
10 advocating a larger class than the one currently that's being
11 asked for proposed by the plaintiffs in this case?
12     MR. EDELSON: It's -- I think their class is probably
13 larger, if I understand it. Ours is limited to people who
14 suffered personal injury. I don't want to speak to --
15     THE COURT: Right. I thought as part -- I thought the
16 plaintiffs' class was limited in geographic scope as well as in
17 time?
18     Is that correct, Ms. Fegan?
19     MS. FEGAN: That's correct for purposes of liability
20 class. That's correct.
21     THE COURT: Right. And so the class, Mr. Edelson,
22 that you would propose would be a different class that's
23 defined differently than that.
24     MR. EDELSON: Yeah, it's bigger and smaller. I agree
25 with that.

1 	The reason we are intervening -- and we have no
2 problem. If your Honor thinks it makes more sense for us to
3 file a separate complaint, we have absolutely no problem with
4 that. Obviously we'll do whatever your Honor wants regardless.
5 But that is totally a reasonable path for us.
6 	The reason that we're doing this is because of
7 efficiencies. Your Honor had this case for a few years. There
8 has already been a lot of discovery done. And we're trying to
9 move quickly. That -- that's the real reason that we're doing
10 it.
11 	MR. SIPRUT: Your Honor, just a brief word. The issue
12 that Mr. Edelson is addressing is what is the prejudice to
13 allowing us to intervene? And believe me when I tell you that
14 we have about 15 pages worth of thoughts in response to that
15 point. But the real issue that I think your Honor was putting
16 your finger on earlier is, what is the prejudice to even
17 getting in this issue at this point, given that the MDL panel
18 has this issue under advisement. We don't know where the case
19 is going.
20 	So the real threshold issue which is really for this
21 morning is, do we have this argument now? Do we brief this
22 issue now? Or do we simply enter and continue Mr. Edelson's
23 motion until we see where the case goes?
24 	There is zero prejudice to taking that approach, which
25 is really the issue that I think your Honor was asking about.

1   Once the MDL panel makes a decision, assuming for the sake of
2   argument the case ends up back here, Mr. Edelson will come in
3   and make all his brilliant arguments about why he should be
4   allowed to intervene.  And we will oppose them.  We will file a
5   brief and tell you why he's wrong.
6   　　　　　But that's not an issue I imagine your Honor wants or
7   needs to get into this morning when we got this threshold issue
8   out there, where is the case going to go?
9   　　　　　THE COURT:  With regard to the mediation, I take it
10  the mediation only involves this case?  Does it involve any of
11  the Tennessee people at all?
12  　　　　　MS. FEGAN:  It's only lead counsel in this, in the
13  Arrington matter, correct.
14  　　　　　THE COURT:  Do defendants have a thought one way or
15  the other on this issue?
16  　　　　　MS. SPELLMAN:  Your Honor, yes.  We agree that it
17  makes sense to just wait until the panel rules on the judicial
18  panel on multi-district litigation rules after the December 5
19  hearing.  It's only a month away.  At that point we know
20  where -- whether these cases are consolidated and where they
21  end up.  We think it makes sense to defer briefing on the
22  motion to intervene until that occurs.
23  　　　　　THE COURT:  All right.  I actually like to brief the
24  issue now.  And so I'd like the -- to the extent that
25  defendants and the plaintiffs are going to object to the motion

1    to intervene, I'd like you to submit a response to the motion.
2    How long will it take you to do so?
3            MS. FEGAN:  Your Honor, could we have 28 days?
4            THE COURT:  That's fine.  Mr. Edelson, do you want a
5    reply?
6            MR. EDELSON:  Yes, your Honor.  My slight concern is
7    that they are just trying to delay to get a settlement done.
8    And that's why they need 28 days.  But they said on the record
9    that there will be no prejudice to us or our clients.  So I
10   take them at their word.
11           Can we have seven days to reply?
12           THE COURT:  That's fine.  That brings us to
13   December 9.  Obviously if any settlement is reached, it will
14   have to be -- you will have to certify a class.  You have to go
15   through all the various procedural requirements.  And if there
16   are any objections obviously to the class or otherwise, we will
17   have to hear it at that point in time.
18           But I think at this point I would like to brief the
19   issues on intervention and take a look at the positions of the
20   parties.  And I will go ahead and issue ruling on that.  In the
21   interim, if the MDL decides to do what it wants to do, then we
22   will see where that goes.  But I'd like to at least have the
23   briefing done so that it can be packaged for the MDL and
24   whoever gets this case subsequently, whether it's me or whoever
25   it may be.

1       All right.  And you anticipate that the MDL will issue
2  its ruling sometime probably late December, early January?
3       MS. FEGAN:  I do.  I would anticipate before the
4  holidays in December.
5       THE COURT:  Okay.  So that we have something in our
6  calendar, let's set this case for further status December 19.
7       THE CLERK:  December 19 at 9:15.
8       MS. FEGAN:  Thank you, your Honor.
9       THE COURT:  Thank you.
10      MR. EDELSON:  Thank you, your Honor.
11      MR. SIPRUT:  Thank you, your Honor.
12    (Which were all the proceedings had at the hearing of the
13       within cause on the day and date hereof.)
14                           CERTIFICATE
15      I HEREBY CERTIFY that the foregoing is a true, correct
16 and complete transcript of the proceedings had at the hearing
17 of the aforementioned cause on the day and date hereof.
18
19   /s/Alexandra Roth                           11/12/2013
     _____   _____
20    Official Court Reporter                      Date
      U.S. District Court
21    Northern District of Illinois
      Eastern Division
22
23
24
25