IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADRIAN ARRINGTON, DEREK OWENS, ANGELICA PALACIOS, and KYLE SOLOMON, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,<br><br>　　　　　　Defendant. | Case No. 11-cv-06356<br><br>Judge John Z. Lee<br><br>Magistrate Judge Brown<br><br>**JURY DEMAND** |

**PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................2

    A. Moore Has No Right to Intervene................................................................................2

        1. Moore's request is not timely. ............................................................................3

        2. Moore's interest will not be impaired by the disposition of this action without his involvement.....................................................................................4

            a. Moore is free to bring an individual action for personal injury damages regardless of the outcome in *Arrington*. ...........................4

            b. The disposition of *Arrington* both protects and increases Moore's ability to obtain personal injury damages. .........................................6

            c. Rule 23 protects Moore in the event of a settlement in *Arrington*...9

        3. Moore's interests are adequately represented by Plaintiffs. ........................9

    B. Moore Also Has No Permissive Right to Intervene................................................11

III. **CONCLUSION** ................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*American Pipe & Constr. Co. v. Utah,*
    414 U.S. 538 (1974) ........................................................................................................... 8

*Commodity Futures Trading Comm'n v. Heritage Capital Advisory Servs., Ltd.,*
    736 F.2d 384 (7th Cir. 1984) ............................................................................................. 3

*Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co.,*
    207 F. Supp. 252 (N.D. Ill. 1962), *aff'd*, 315 F.2d 564 (7th Cir. 1963) ........................... 12

*Crowder v. Lash,*
    687 F.2d 996 (7th Cir. 1982) ......................................................................................... 1, 8

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001) ............................................................................................... 12

*FTC v. Med Resorts Int'l, Inc.,*
    199 F.R.D. 601 (N.D. Ill. 2001) ........................................................................................ 7

*Gabriel v. Standard Fruit & S.S. Co.,*
    448 F.2d 724 (5th Cir. 1971) ............................................................................................. 9

*Grochocinski v. Mayer Brown Rowe & Maw, LLP,*
    719 F.3d 785 (7th Cir. 2013) ......................................................................................... 3, 4

*Hawaii-Pacific Venture Capital Corp. v. Rothbard,*
    564 F.2d 1343 (9th Cir. 1977) ........................................................................................... 9

*Heartwood, Inc. v. United States Forest Serv.,*
    316 F.3d 694 (7th Cir. 2003) ........................................................................................... 11

*Jenkins v. Missouri,*
    78 F.3d 1270 (8th Cir. 1996) ........................................................................................ 9, 10

*Keith v. Daley,*
    764 F.2d 1265 (7th Cir. 1985) ........................................................................................... 3

*Levin v. Mississippi River Corp.,*
    47 F.R.D. 294 (S.D.N.Y. 1969) ...................................................................................... 13

*Ligas v. Maram*,
   478 F.3d 771 (7th Cir. 2007) ............................................................................................9, 11

*Martin v. Kalvar Corp.*,
   411 F.2d 552 (5th Cir. 1969) ...................................................................................................9

*Meridian Homes Corp. v. Nicholas W. Prassas & Co.*,
   683 F.2d 201 (7th Cir. 1982) ............................................................................................5, 11

*Saf-T-Gard Int'l v. Vanguard Energy Servs.*,
   2012 U.S. Dist. LEXIS 174222 (N.D. Ill. Dec. 6, 2012) .........................................................8

*Savanna Group, Inc. v. Trynex, Inc.*,
   2013 U.S. Dist. LEXIS 1277 (N.D. Ill. Jan. 4, 2013) ...............................................................8

*Shea v. Angulo*,
   19 F.3d 343 (7th Cir. 1994) ...................................................................................................11

*Southmark Corp. v. Cagan*,
   950 F.2d 416 (7th Cir. 1991) .................................................................................................11

*Stern v. Chemtall Inc.*,
   617 S.E.2d 876 (W. Va. 2005) ................................................................................................6

*Stull v. Baker*,
   1973 U.S. Dist. Lexis 12514 (S.D.N.Y. July 27, 1973) .........................................................12

*United States v. 36.96 Acres of Land*,
   754 F.2d 855 (7th Cir. 1985) ...................................................................................................3

*United States v. South Bend Cmty. Sch. Corp.*,
   710 F.2d 394 (7th Cir. 1983) ...................................................................................................3

**OTHER AUTHORITIES**

*Newberg on Class Actions* § 11.55 (4th ed. 2002) ..........................................................................9

*Newberg on Class Actions* § 22.78 (4th ed. 2002) ..............................................................4, 7, 11

I.   INTRODUCTION

Plaintiffs have devoted more than 7,500 hours over the past three years to protect the interests of NCAA student-athletes in this medical monitoring and breach of contract class action. Recognizing that student-athletes might have individual personal injury claims, Plaintiffs have expressly sought to ensure those claims are protected and not subject to claim preclusion.[1] Also, after completing merits discovery, Plaintiffs moved for class certification of a Medical Monitoring Class[2] and Core Issues Class,[3] supported by a 78-page Proffer of Facts in Support of Class Certification ("Fact Proffer") and an expert analysis from one of the nation's leading sport concussion experts, Dr. Robert Cantu, detailing the NCAA's willful failure to adopt consensus best practices in concussion management.

Only after Plaintiffs and the NCAA agreed to mediate did proposed intervenors Frank Moore and Anthony Nichols (collectively "Moore") become "concerned" their rights were not being protected. Yet, Moore has not filed an individual complaint detailing his claims, which would serve to protect any interests he may have. Likewise, Moore's concern that any future settlement may impair his claims is unwarranted as Plaintiffs have expressly disavowed settling individual personal injury claims. Nonetheless, Federal Rule of Civil Procedure 23 provides procedural protections in the event of a settlement, providing class members the opportunity to object to a class settlement or opt-out of any settlement. Moore's attempt to intervene appears to be nothing more than another attempt to get a seat at the proverbial table for settlement. Indeed,

---

[1] See Plaintiffs' Memorandum in Support of Motion for Class Certification (Dkt. No. 175), at 24-27 (requesting that the Court immunize Plaintiffs and absent class members from assertions of claim preclusion for damages claims in subsequent individual litigation). See also Crowder v. Lash, 687 F.2d 996, 1009 (7th Cir. 1982) (holding that an earlier class action in which only declaratory and injunctive relief were sought does not preclude absent class members from seeking damages for the same alleged misconduct).

[2] See Plaintiffs' Motion for Class Certification (Dkt. No. 174) (defining medical monitoring class as: "All present or former students listed on a college team roster in the contact sports of football, wrestling, basketball, field hockey, ice hockey, lacrosse, or soccer, at any NCAA institution in any of 18 jurisdictions during the period 2004 through the present.").

[3] Id. (defining "core-issues" class as: "All present or former students listed on a college team roster at any NCAA institution during the period 2004 through the present who participated in the contact sports of football, wrestling, basketball, field hockey, ice hockey, lacrosse, or soccer.").

Moore is just one of eight plaintiff groups[4] making an 11th-hour pitch to get rewarded without having invested any prosecutorial labor to date.

Moore's bid for intervention as a matter of right should be denied under Rule 24(a)(2) for the following reasons. First, his request is not timely because Plaintiffs filed their Motion for Class Certification in July 2013 after full discovery. Moore will need to start discovery of his personal injury claims from square one, inevitably delaying decision for the Medical Monitoring and Core Issues Classes. Second, Moore cannot demonstrate a sufficient practical impairment to his interest because Moore remains free to file a separate complaint and pursue personal injury damages. Third, his interest in this action is adequately protected by Plaintiffs, given the fact that Plaintiffs have expressly sought to ensure that class members are not precluded from bringing personal injury claims in Plaintiffs' Motion for Class Certification.

Furthermore, permissive intervention under Rule 24(b)(3) should be denied because intervention will necessarily result in undue delay and prejudice to Plaintiffs. Moore's motion, filed on the eve of mediation, is a transparent attempt to delay either a decision on Plaintiffs' Motion for Class Certification or a resolution and the implementation of medical monitoring relief for Plaintiffs and the class.[5] Moore's motion will not only delay Plaintiffs' action but also delay justice and relief for the class and, therefore, should be denied.

## II. ARGUMENT

### A. Moore Has No Right to Intervene

Rule 24(a)(2) provides four requirements that every proposed intervenor must satisfy before intervention of right is allowed: (i) the application must be timely; (ii) the applicant must have a direct and substantial interest in the subject matter of the litigation; (iii) the applicant's

---

[4] Between August 1, 2013 and December 3, 2013, eight class actions have been filed across the country purporting to represent NCAA student-athletes related to concussions. Plaintiffs filed a Motion to Transfer for Coordinated or Consolidated Pre-Trial Proceedings Pursuant to 28 U.S.C. § 1407 before the Judicial Panel on Multi-District Litigation, requesting all of the actions be transferred to this Court (Dkt. No. 188). The hearing is scheduled for December 5, 2013.

[5] Moore's Proposed Complaint, ¶ 107 ("[W]ithout the Court-supervised and approved medical monitoring program ... Plaintiffs and the Class will continue to face an unreasonable risk of continued injury and disability.").

interest must be impaired by disposition of the action without the applicant's involvement; and (4) the applicant's interest must not be represented adequately by one of the existing parties to the action.[6] The party seeking to intervene has the burden of proving each of the four elements of intervention as of right, and failing to prove just one element requires denial of the motion to intervene.[7] Moore's bid for intervention as a matter of right should be denied, because Moore has failed to demonstrate that (i) his request is timely, (ii) his interest will be impaired by disposition of the action without his involvement, and (iii) his interest in this case is not adequately represented by the existing parties.

### 1. Moore's request is not timely.

First, Rule 24(a)(2) requires that the motion to intervene be "timely." "The purpose of the requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal."[8] The timeliness requirement forces interested non-parties to seek to intervene promptly so as not to upset the progress made toward resolving a dispute.[9] Courts look to four factors to determine whether a motion is timely: "(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances."[10]

---

[6] *United States v. 36.96 Acres of Land*, 754 F.2d 855, 858 (7th Cir. 1985).

[7] *Commodity Futures Trading Comm'n v. Heritage Capital Advisory Servs., Ltd.*, 736 F.2d 384, 386 (7th Cir. 1984) (affirming denial of intervention as a matter of right where applicant had alternative forums to pursue its claim); *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985) (affirming denial of intervention as a matter of right where applicant failed to demonstrate a substantial interest in the litigation); *36.96 Acres*, 754 F.2d at 858 (affirming denial of intervention as a matter of right where applicant failed to demonstrate a substantial interest in the litigation).

[8] *United States v. South Bend Cmty. Sch. Corp.*, 710 F.2d 394, 396 (7th Cir. 1983) (denying motion to intervene where intervenors waited to file for four and a half months after the filing of a consent decree).

[9] *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 797-98 (7th Cir. 2013) (denying motion to intervene as untimely filed two and a half years after intervenor knew his reputation may be at issue in the case).

[10] *Id.*

First, Moore's motion is untimely because he knew of his interest in the case long before the filing of his motion. This action has been pending for approximately three years and has received attention in the national media.

Second, the prejudice caused to the original parties by the delay is manifest and Moore's intervention will only serve to "upset the progress made toward resolving a dispute."[11] Moore's intervention seeking personal injury damages on behalf of a class unlimited in time and scope will involve significant additional discovery, briefing, and proof beyond the scope of the instant claims in this action. Moore's involvement in this case will delay any relief sought by Plaintiffs.

Finally, there is absolutely *zero* prejudice to Moore if his Motion is denied – a fact conceded by Moore's own counsel.[12] Moore is able to file his own case to protect any interest he may have in his individual personal injury claims. Tellingly, however, Moore has yet to do so but rather seeks to muscle in on this action on the eve of settlement negotiations without having done any of the heavy lifting on behalf of student-athletes. Therefore, there is no prejudice to Moore if his request is denied. If this action settles, he will be entitled to medical monitoring relief *and* have the right to file a separate action for personal injury damages.

2. **Moore's interest will not be impaired by the disposition of this action without his involvement.**

   a. **Moore is free to bring an individual action for personal injury damages regardless of the outcome in *Arrington*.**

Second, Moore has failed to demonstrate that his interest will be impaired by disposition of this action without his involvement, because Moore will be free to bring individual actions for personal injury damages against the NCAA regardless of the outcome of this action.[13]

---

[11] *Id.* at 797.

[12] *See* Transcript of Proceedings – Motion Before the Honorable John Z. Lee, Nov. 15, 2013 ("Transcript of Proceedings"), at 15 ("We are allowed to file a complaint. We don't have to move to intervene.").

[13] *Newberg on Class Actions* § 22.78 (4th ed. 2002) ("A refusal by the class representative to expand the claims of the action to include those alleged by an intervenor does not render the representation inadequate or permit intervention as of right pursuant to Rule 24(a)(2). *The proposed intervenor's ability to protect his or her interest in the subject matter of the action is*

"Impairment" of an interest for purposes of intervention as a matter of right exists if the decision of a legal question would, as a practical matter, "foreclose rights of the proposed intervenors in a subsequent proceeding.... Potential foreclosure is measured by the general standards of *stare decisis*."[14] The disposition of this action will not foreclose Moore from bringing separate actions for personal injury damages – another point which Moore does not dispute. In fact, Moore can file claims for personal injury damages now if he so chooses, which counsel for Moore readily acknowledges.[15] Moreover, Moore readily admits that he will be able to pursue personal injury damages regardless of the disposition of this action and will merely "be required to file separate individual lawsuits seeking compensation."[16]

Moore also goes to great lengths to demonstrate that he would be able to certify a damages class for personal injuries.[17] However, Moore does not specify how his ability to certify such a class is ***impaired, or foreclosed,*** by the disposition of this action – which is the relevant inquiry in evaluating the necessity of intervention. Moore's assertion that he can easily certify a damages class does not support intervention, but instead suggests that he can freely litigate that issue in a separate action.

Moore cites a single, distinguishable, and non-binding case from the Supreme Court of West Virginia for the proposition that "class members with claims for damages already suffered may intervene where the existing parties have limited their claims to medical monitoring

---

***not impaired, since he or she can institute a separate action pressing the additional claims.***") (emphasis added).

[14] *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204-05 (7th Cir. 1982) (intervention not allowed and no impairment of interest when the proposed intervenors were maintaining a separate action that would permit a full adjudication of their rights).

[15] *See* Transcript of Proceedings at 15 ("We are allowed to file a complaint. We don't have to move to intervene."); *id.* ("The reason we are intervening – and we have no problem. If your Honor thinks it makes more sense for us to file a separate complaint, we have absolutely no problem with that. Obviously we'll do whatever your Honor wants regardless. But that is totally a reasonable path for us.").

[16] Motion to Intervene at 11.

[17] *Id.* at 11-12.

relief."[18] In *Stern*, intervenors had filed a class action case seeking additional claims such as personal injury damages on behalf of coal workers approximately one year prior to the certified medical monitoring case in which they were seeking to intervene. The district court denied intervention as a matter of right and the Supreme Court of West Virginia held that intervenors should have been allowed to intervene as a matter of permissive intervention.[19] First, *Stern* is not binding on this Court because it involved the interpretation and application of West Virginia law and not Federal Rule of Civil Procedure 24. Second, Moore cites *Stern* for the proposition that he should be allowed to intervene as a matter of right despite the fact that the *Stern* court utilized its discretion under permissive intervention as a matter of judicial efficiency because "the issues are similar enough that many of the ... discovery requests will be identical in nature."[20] This is simply not the case here, where Plaintiffs have completed approximately two years of discovery and Moore now seeks to intervene to conduct extensive additional discovery regarding personal injury claims for every NCAA student-athlete who has sustained a concussion – a process which could yet take several years.[21] Unlike in *Stern*, consolidation of the cases would actually be *inefficient* and significantly prejudice the prosecution of Plaintiffs' claims – particularly Plaintiffs' ability to obtain medical monitoring relief.

### b. The disposition of *Arrington* both protects and increases Moore's ability to obtain personal injury damages.

A proposed intervenor's ability to protect his or her interest in the subject matter of the action is not impaired where he or she can institute a separate action pressing the additional

---

[18] *Stern v. Chemtall Inc.*, 617 S.E.2d 876, 886 (W. Va. 2005).

[19] *Id.* at 880.

[20] *Id.* at 883.

[21] *See* Moore's Proposed Complaint, ¶ 11 (seeking to represent a class consisting of: "[A]ll current and former NCAA student-athletes who sustained a concussion(s) or suffered concussion-like symptoms while playing an NCAA regulated sport and who incurred medical expenses as a result."). *See also* Transcript of Proceedings at 7 (counsel for Moore acknowledging that extensive additional discovery will need to be conducted regarding personal injury claims).

claims.[22] Similarly, an interest cannot be "impaired" for purposes of intervention as a matter of right where a pending case makes it easier for a proposed intervenor to protect his or her interest.[23]

The interests of Plaintiffs and Moore are aligned and Plaintiffs have adequately protected, preserved, and even advanced Moore's rights and ability to obtain personal injury damages separately from this action. Plaintiffs worked hard to ensure that the facts they discovered were made public, extensively conferring with the NCAA to ensure that hot documents marked Confidential by the NCAA under the Protective Order were de-designated. As a result, Dr. Cantu's expert analysis detailing the NCAA's negligence was publicly filed with the Court. Likewise, Plaintiffs' Proffer of Facts submitted in support of class certification contains just one redaction. Plaintiffs have thus ensured that student-athletes pursuing individual damage claims will not have to recreate the wheel as to the NCAA's negligence.

Moreover, a jury finding for Plaintiffs and the class on the "core issues" questions[24] would *increase* the likelihood that Moore would be compensated for his injuries.[25] Even absent any resolution of the "core issues" class in this action, Moore will still have the ability to bring personal injury lawsuits against the NCAA. In the case of a settlement or successful judgment,

---

[22] *Newberg on Class Actions* § 22.78 (4th ed. 2002) ("The proposed intervenor's ability to protect his or her interest in the subject matter of the action is not impaired, since he or she can institute a separate action pressing the additional claims.").

[23] *FTC v. Med Resorts Int'l, Inc.*, 199 F.R.D. 601, 606 (N.D. Ill. 2001) (denying motion to intervene and noting that injunctive relief obtained in pending case actually made it easier for intervenors to protect their interests and therefore could not possibly constitute an "impairment" of interest).

[24] *See* Plaintiffs' Memorandum in Support of Motion for Class Certification, at 35-36 (Dkt. No. 175) ("Should the issues be resolved in Class Members' favor, this Court will have maximized the assistance it provides to courts trying individual claims.... Following trial of the Core Issues, Class Members and the NCAA will be able to rely on the duty-and-breach findings from this Court to streamline litigation of the remaining individualized issues. Moreover, Class Members in individual litigation unaided by Rule 23(c)(4) would be at substantial disadvantage trying to prosecute separate and enormously expensive actions against the well-resourced NCAA.").

[25] *Med Resorts Int'l*, 199 F.R.D. at 606 (denying motion to intervene and noting that injunctive relief obtained in pending case actually made it easier for intervenors to protect their interests and therefore could not possibly constitute an "impairment" of interest).

Moore will obtain the very medical monitoring relief he seeks *and* still be free to pursue individual damages. Therefore, intervention is unnecessary.

Finally, Plaintiffs have protected the ability of class members to bring personal injury claims by specifically requesting in their Motion for Class Certification that those claims will not be precluded in individual and subsequent proceedings.[26] Additionally, Moore is also protected because the statute of limitations for personal injury claims was tolled as a result of the filing of this action and remains so based on the current state of the pleadings because class certification has not been denied.[27] The NCAA has acknowledged that the Second Amended Complaint, and not Plaintiffs' Motion for Class Certification, contains the operative class definition in this action.[28] Therefore, the statute of limitations for personal injury damages remains tolled as to the entire class.[29]/[30]

---

[26] *See* Plaintiffs' Memorandum in Support of Motion for Class Certification (Dkt. No. 175), at 24-27 (requesting that the Court immunize Plaintiffs and absent class members from assertions of claim preclusion for damages claims in subsequent individual litigation); *see also Crowder*, 687 F.2d at 1009 (holding that an earlier class action in which only declaratory and injunctive relief were sought does not preclude absent class members from seeking damages for the same alleged misconduct).

[27] *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) ("the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action").

[28] *See* MDL No. 2492 (Dkt. No. 13), *Response of the NCAA to Plaintiffs' Motion for Transfer and Consolidation Pursuant to 28 U.S.C. § 1407*, n.3 ("Leave to amend the Second Amended Complaint in *Arrington* and the definition of the proposed class contained in that pleading has not been sought or obtained, and we believe that remains the operative definition of the proposed class in *Arrington*.").

[29] *See, e.g., Saf-T-Gard Int'l v. Vanguard Energy Servs.*, 2012 U.S. Dist. LEXIS 174222, at *19 (N.D. Ill. Dec. 6, 2012) ("A motion for class certification cannot operate as a de facto amendment of a complaint."); *see also Savanna Group, Inc. v. Trynex, Inc.*, 2013 U.S. Dist. LEXIS 1277, at *8-10 (N.D. Ill. Jan. 4, 2013) (permitting amendment of class definition after a class-certification ruling to conform the complaint to the certification order).

[30] Any contention by Moore that Plaintiffs have not adequately protected the interests of class members by attempting to certify a personal injury class for class-wide damages should be rejected. As Lead Counsel, we have been charged with acting in the best interests of the class. To that end, we were required to balance the risks of seeking certification of a personal injury class against the likelihood of certifying the Medical Monitoring and Core Issues Classes. That analysis resulted in Plaintiffs putting their best foot forward in their Motion for Class Certification. *See* Section II.A.3, *infra*. Moore's desire to bring additional claims does not require intervention, but instead a separate lawsuit.

### c. Rule 23 protects Moore in the event of a settlement in *Arrington*

In addition to Moore's ability to file his own case and protect his interests, Federal Rule of Civil Procedure 23(e) provides the proper mechanism for class members to have input once a settlement is actually reached.[31] If a settlement is reached in *Arrington*, Moore will be provided notice of the settlement, and the *Arrington* Court will provide all class members ample opportunity to review and analyze the proposed terms. The *Arrington* court will then schedule a date by which all comments in support of or objections to the settlement must be filed, as well as a date for class members to exclude themselves if they prefer to pursue all claims individually. Moore will have the opportunity to be heard at that juncture.[32] Because Rule 23 provides Moore the protections he desires in the event a settlement is reached in *Arrington*, intervention is unnecessary.

### 3. Moore's interests are adequately represented by Plaintiffs.

Third, adequacy of representation is presumed when the intervenor is a member of a class already involved in the litigation, even if the class has yet to be certified.[33] Other circuit courts have also held that a class action adequately represents absent class members for purposes of deciding motions to intervene.[34] Notably, however, "***[a] difference of opinion concerning litigation strategy or individual aspects of a remedy does not overcome the presumption of adequate representation.***"[35]

---

[31] *See, e.g., Newberg on Class Actions* § 11.55 (4th ed. 2002) ("the capacity to object remains an important means of protecting unnamed class members").

[32] In fact, *Newberg* notes that objecting – just as Moore is prematurely attempting to do here – has become "big business." *Newberg on Class Actions* § 11.55 ("While the capacity to object remains an important means of protecting unnamed class members, objecting has become big business.").

[33] *Ligas v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007) (determining that an entire class was represented adequately in class action).

[34] *See, e.g., Jenkins v. Missouri*, 78 F.3d 1270, 1275 (8th Cir. 1996); *Hawaii-Pacific Venture Capital Corp. v. Rothbard*, 564 F.2d 1343, 1346 (9th Cir. 1977); *Martin v. Kalvar Corp.*, 411 F.2d 552, 553 (5th Cir. 1969); *Gabriel v. Standard Fruit & S.S. Co.*, 448 F.2d 724, 725 (5th Cir. 1971).

[35] *Jenkins*, 78 F.3d at 1275 (emphasis added).

Yet, the primary basis for Moore's request is Plaintiffs' alleged "departure from their strategy" to seek damages and that "a damages class could and should have been pursued beyond one limited to 'core-issues.'"[36] Therefore, it is clear that Moore seeks to intervene based on a "[a] difference of opinion concerning litigation strategy or individual aspects of a remedy" which the Seventh Circuit has routinely held "does not overcome the presumption of adequate representation."[37] Apart from questioning Plaintiffs' litigation strategy regarding pursuit of a specific remedy, Moore offers nothing to overcome the presumption that Plaintiffs adequately represent the interests of absent class members.

Further, Plaintiffs have not "abandoned" class members' right to obtain personal injury damages but rather have vigorously sought to protect and advance that very right by expressly seeking to ensure those claims are protected and not subject to claim preclusion.[38] Plaintiffs have also sought certification of a "core-issues" class – the disposition of which will advance individual litigation for personal injury damages on behalf of individual class members such as Moore. Plaintiffs fought to make all discovery transparent by extensively conferring with the NCAA to ensure that hot documents marked "Confidential" by the NCAA under the Protective Order were de-designated which has resulted in public filings documenting the NCAA's negligence available for individual class member use.

Finally, Moore's argument that Plaintiffs are not pursuing personal injury damages and thus are not adequately representing his interests is irrelevant here where Moore freely admits

---

[36] Motion to Intervene at 13.

[37] *Jenkins*, 78 F.3d at 1275 (citing *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987); *Stadin v. Union Elec. Co.*, 309 F.2d 912, 919 (8th Cir. 1962); *United States v. South Bend Cmty. Sch. Corp.*, 692 F.2d 623, 628 (7th Cir. 1982); *Pennsylvania v. Rizzo*, 530 F.2d 501, 505 (3d Cir. 1976); *cf. United States v. Perry County Bd. of Educ.*, 567 F.2d 277, 280 (5th Cir. 1978)).

[38] *See* Plaintiffs' Memorandum in Support of Motion for Class Certification (Dkt. No. 175), at 24-27 (requesting that the Court immunize Plaintiffs and absent class members from assertions of claim preclusion for damages claims in subsequent individual litigation).

that he is able to maintain and pursue his own individual action against the NCAA.[39] Absent Moore's difference of opinion regarding strategy in pursuing a remedy – which is insufficient alone to establish the necessity for intervention as a matter of right – Moore has offered nothing to rebut the presumption that his interest is not represented adequately by the Plaintiffs in this action. Therefore, intervention is unnecessary.

### B. Moore Also Has No Permissive Right to Intervene

This Court should also deny Moore's request for permissive intervention. Permissive intervention is within the discretion of the District Court, when the applicant's claim and the main action share common issues of law or fact, there is independent jurisdiction, and intervention would not unduly delay or prejudice the adjudication of the rights of the original parties.[40] "[T]he fact that some issues of law and fact are common to claims of both the proposed intervenor and the established class does not satisfy the requirements of permissive intervention if the additional allegations will result in delay of the pending case."[41] Permissive intervention should be denied because Moore's effort to intervene to take additional discovery and attempt to certify a damages class for personal injury will necessarily result in undue delay and prejudice to the original Plaintiffs in this action.

In exercising its discretion, a court must consider whether intervention would unduly delay or prejudice the adjudication of the rights of the original parties.[42] Rule 24(b)(3) serves as

---

[39] *See, e.g., Meridian Homes*, 683 F.2d at 204-05 (intervention not allowed when the proposed intervenors were maintaining a separate action that would permit a full adjudication of their rights).

[40] *Ligas*, 478 F.3d at 775; *Southmark Corp. v. Cagan*, 950 F.2d 416, 419 (7th Cir. 1991) (holding that permissive intervention would unduly delay the original lawsuit and would threaten the efficiency of the proceeding); *Heartwood, Inc. v. United States Forest Serv.*, 316 F.3d 694, 701 (7th Cir. 2003) (holding that granting of permissive intervention was improper where district court failed to consider whether intervention would cause undue delay or prejudice); *Shea v. Angulo*, 19 F.3d 343, 346 (7th Cir. 1994) (denying permissive intervention where intervention would make the current action unnecessarily complex, unwieldy and prolonged).

[41] *Newberg on Class Actions* § 22.78 (4th ed. 2002).

[42] Fed. R. Civ. P. 24(b)(3); *Southmark Corp.*, 950 F.2d at 419 (holding that permissive intervention would unduly delay the original lawsuit and would threaten the efficiency of the

a caution to the Court "so that in its [z]eal to avoid a multiplicity of suits it will not hamper or vex the claims of the original parties."[43]

Allowing Moore to intervene will only subject Plaintiffs, Defendant and the Court to further complications, delay and wasted resources. Specifically, the ability of Plaintiffs to pursue their action and obtain medical monitoring relief will be prejudiced if intervention is allowed. Plaintiffs have been litigating for approximately three years to obtain medical monitoring relief and intervention would certainly delay any relief for the class. To date, Plaintiffs have filed their Motion for Class Certification and Memorandum in Support, together with an extensive Proffer of Facts and a detailed expert analysis. Plaintiffs and the NCAA have also completed full merits discovery regarding the NCAA's knowledge of concussions as well as its purported concussion policies and lack thereof.[44] Allowing Moore to insert himself at this stage in an attempt to take extensive additional discovery and certify a damages class unlimited in both time and scope[45] will significantly delay the disposition of this action and any relief for Plaintiffs and the class. The relief sought "would seriously alter, complicate and delay resolution of the issues in the case at bar" and "entail proof extending far beyond the scope of the instant claims"[46] which would

---

proceeding); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (finding that class member's intervention in a class action would cause intolerable delay, derail a potential settlement between the parties and would prejudice the class).

[43] *Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co.*, 207 F. Supp. 252, 257 (N.D. Ill. 1962), *aff'd*, 315 F.2d 564 (7th Cir. 1963).

[44] The Plaintiffs have reviewed the production of 29,502 documents (176,849 pages) by the NCAA, 8,124 documents by 42 third parties (28,485 pages), and 3,842 documents (10,144 pages) by Plaintiffs. Plaintiffs took 10 depositions of the NCAA's fact witnesses, and the NCAA deposed the four representative Plaintiffs and one absent class member.

[45] The class which Moore seeks to represent is significantly larger than the class represented by Plaintiffs. *See* Moore's Proposed Complaint, ¶ 11, seeking to represent a class consisting of: "[A]ll current and former NCAA student-athletes who sustained a concussion(s) or suffered concussion-like symptoms while playing an NCAA regulated sport and who incurred medical expenses as a result."; *see also* Transcript of Proceedings at 7 (counsel for Moore acknowledging the difference in the size of proposed classes).

[46] *Stull v. Baker*, 1973 U.S. Dist. Lexis 12514, at *30-31 (S.D.N.Y. July 27, 1973) (denying intervention to an absent class member and noting that the fact that there may be some duplication in discovery and proof was not sufficient to overcome the major complications and

only serve to confuse the picture and prejudice the class represented by Plaintiffs. Counsel for Moore acknowledge that such an undertaking will require a significant amount of additional work and, accordingly, significant delay for Plaintiffs.[47] The Court should use its discretion to prevent such an unjust result.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court deny Moore's motion to intervene, and grant all such other relief as the Court deems necessary and appropriate.

Date: December 3, 2013

Respectfully submitted,

ADRIAN ARRINGTON, DEREK OWENS, ANGELICA PALACIOS, and KYLE SOLOMON, individually and on behalf of all others similarly situated

By: /s/ Steve W. Berman

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
206.623.7292
Fax: 206.623.0594

Elizabeth A. Fegan
Daniel Kurowski
Thomas E. Ahlering
HAGENS BERMAN SOBOL SHAPIRO LLP
1144 W. Lake Street, Suite 400
Oak Park, IL 60301
708.628.4949
Fax: 708.628.4950

---

difficulties which would result from permitting intervention); *Levin v. Mississippi River Corp.*, 47 F.R.D. 294, 298-99 (S.D.N.Y. 1969) (finding that the relief sought by potential intervenor involved "many more and fundamentally different factual and legal issues, which, if injected into the instant action, would greatly expand the scope of proof at the trial").

[47] *See also* Transcript of Proceedings at 7 (counsel for Moore acknowledging that additional discovery will need to be conducted regarding personal injury claims); *id.* at 14 (acknowledging that certifying a damages class will require additional work).

- 13 -

010270-11 658490 V1

>Joseph J. Siprut
>SIPRUT PC
>17 North State Street
>Suite 1600
>Chicago, IL 60602
>312.236.0000
>Fax: 312.878.1342
>
>*Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I, Steve W. Berman, herby certify that I am one of the attorneys for Plaintiffs and that, and on this day I caused a copy of the annexed hereto to be served on all counsel of record in this proceeding via CM/ECF.

Dated: December 3, 2013          By:    /s/ Steve W. Berman