**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ADRIAN ARRINGTON, DEREK OWENS, ANGELA PALACIOS, and KYLE SOLOMON individually and on behalf of all others similarly situated,** | ) ) ) ) | **Case No. 1:11-cv-06356** |
| | ) | **Judge John Z. Lee** |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Magistrate Judge Geraldine Soat Brown** |
| | ) | |
| **NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,** | ) ) | **JURY DEMAND** |
| **Defendant.** | ) ) | |

**MEMORANDUM IN OPPOSITION TO
<u>MOTION FOR LEAVE TO INTERVENE</u>**

Dated:  December 3, 2013

Mark S. Mester
   mark.mester@lw.com
Sean M. Berkowitz
   sean.berkowitz@lw.com
Johanna M. Spellman
   johanna.spellman@lw.com
Katherine Walton
   katherine.walton@lw.com
LATHAM & WATKINS LLP
233 South Wacker Drive, Suite 5800
Chicago, Illinois 60606
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

J. Christian Word
   christian.word@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004-1304
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201

## TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................................1

II.     FACTUAL BACKGROUND .......................................................................................1

        A.      Plaintiffs File Suit In September Of 2011......................................................2

        B.      Plaintiffs' Current Pleading ...........................................................................3

        C.      Plaintiffs' Motion For Class Certification .....................................................3

        D.      Mediation .......................................................................................................5

        E.      Additional Class Cases Are Filed ..................................................................6

        F.      The Instant Motion.........................................................................................7

III.    ARGUMENT ..............................................................................................................7

        A.      Proposed Intervenors Fail To Satisfy The Requirements For Intervention
                As A Matter Of Right ....................................................................................7

                1.      The Disposition Of Arrington Will Not Impair The Ability Of The
                        Proposed Intervenors To Protect Their Interests ..........................8

                2.      If A Settlement Is Reached, The Proposed Intervenors And Their
                        Counsel Will Have A Full Opportunity To Either Object To The
                        Settlement Or Opt Out ................................................................10

                3.      The Proposed Intervenors Are Also Free To Pursue Their
                        Individual Claims........................................................................11

                4.      The Proposed Intervenors' Motion Is Also Untimely...............11

        B.      The Proposed Intervenors Also Fail To Satisfy The Requirements For
                Permissive Intervention ..............................................................................13

IV.     CONCLUSION..........................................................................................................15

Defendant National Collegiate Athletic Association ("NCAA") submits the following memorandum in opposition to the motion for leave to intervene filed on October 29, 2013 by Proposed Intervenors Frank Moore and Anthony Nichols (the "Proposed Intervenors"):

## I.  INTRODUCTION

As we recently indicated to the Judicial Panel on Multidistrict Litigation, the Second Amended Complaint remains the operative pleading in this matter, and the operative definition of the proposed class in this case remains the definition set forth in that pleading, namely "All current and former NCAA student-athletes who experienced one or more head impacts while playing sports at an NCAA school resulting in a concussion or concussion-like symptoms." See Second Am. Compl. (Dkt. #135) at ¶ 227.  The class proposed in the Second Amended Complaint, however, fully subsumes the class that the Proposed Intervenors now ask to represent.  As such, the interests of the Proposed Intervenors are amply protected already, and to the extent the Proposed Intervenors wish to pursue their individual claims in a different fashion or manner, there is obviously no reason why they cannot do so in a forum of their own choosing.

More fundamentally, the NCAA's focus in the ongoing mediation in this case is the broader class proposed in the Second Amended Complaint as opposed to the narrower classes proposed in the pending motion for class certification.  If and when a settlement is reached, however, the Proposed Intervenors would obviously have a full opportunity to object to the settlement if they believe it is not fair, reasonable and adequate.  Alternatively, the Proposed Intervenors would also have an opportunity to opt out of the class if a settlement is reached.  But in the meantime, allowing the Proposed Intervenors and their counsel to intervene, reopen discovery in this case and join the mediation at this late date would only complicate matters and almost certainly make settlement less likely.

## II.  FACTUAL BACKGROUND

The factual background for this litigation is set forth below.  See disc. infra at 1-7.

**A.      Plaintiffs File Suit In September Of 2011**

This case was filed in September of 2011.  <u>See</u> <u>Arrington</u> Compl. (Dkt. #1); <u>see</u> <u>also</u>

Compl., <u>Owens, et al. v. NCAA</u>, No. 1:11-cv-06816 (N.D. Ill., filed Sept. 28, 2011) at Dkt. #1

("<u>Owens</u> Compl.").[1]  In his initial Complaint, Plaintiff Adrian Arrington sought certification of

the following proposed class:

> All former NCAA football players who sustained a concussion(s) or suffered
> concussion-like symptoms while playing football at an NCAA school, and who
> have, since ending their NCAA careers, developed chronic headaches, chronic
> dizziness or dementia or Alzheimer's disease and/or other physical and mental
> problems as a result of the concussion(s) suffered while a player (the "Class").

<u>Arrington</u> Compl. (Dkt. #1) at ¶ 39.  Arrington also sought certification of a medical monitoring

class consisting of "[a]ll former and current NCAA football players who suffered a concussion or

concussion-like symptoms while playing football at an NCAA school."  <u>Id.</u> at ¶ 40.

On October 5, 2011, Judge Coleman consolidated <u>Owens</u> and this case, and Plaintiffs'

counsel filed a Consolidated Complaint on November 21, 2011.  <u>See</u> (Minute Entry (Dkt. #18);

Consol. Compl. (Dkt. #25).  The Consolidated Complaint expanded the proposed classes as well

as the relief sought on their behalf.  <u>See</u> Consol. Compl. (Dkt. #25) at ¶¶ 113-14, Request for

Relief.  In the Consolidated Complaint, Plaintiffs Adrian Arrington, Derek Owens, and Angelica

Palacios ("Plaintiffs") sought certification of two proposed Plaintiff classes:  (1) a nationwide

class of "[a]ll former NCAA student-athletes who sustained a concussion(s) or suffered

concussion-like symptoms" while playing any sport at an NCAA member institution and who

incurred medical expenses from symptoms occurring after their college careers ended; and (2) a

nationwide class of "[a]ll former and current NCAA student-athletes who have suffered a

---

[1]    As discussed in more detail below, a competing class complaint was filed on behalf of Derek Owens
approximately two weeks after this case was filed.  <u>See</u> <u>Owens</u> Compl.  This case and <u>Owens</u> were then
consolidated on October 5, 2011.  <u>See</u> Minute Entry (Dkt. #18).

concussion or concussion-like symptoms while playing sports at an NCAA school."[2]  See id. at ¶¶ 113, 114.

## B.    Plaintiffs' Current Pleading

Pursuant to Fed. R. Civ. P. 15, Plaintiffs and their counsel sought leave to amend the Consolidated Complaint on February 12, 2013.  See Pls.' Unopposed Mot. for Leave (Dkt. #121).  The Court granted Plaintiffs leave to amend on February 13, 2013.  See Minute Entry (Dkt. #123).  As with their prior pleadings, however, Plaintiffs' Second Amended Complaint seeks certification of a nationwide class consisting of "[a]ll current and former NCAA student-athletes who experienced one or more head impacts while playing sports at an NCAA school resulting in a concussion or concussion-like symptoms."  See Second Am. Compl. (Dkt. #135) at ¶ 227.[3]

Plaintiffs' Second Amended Complaint remains their operative pleading in this case, and the definition of the proposed class in that pleading likewise remains operative.  See disc. infra at 8-9.  No effort whatsoever has been made to seek leave to amend the Second Amended Complaint or the definition of the proposed class contained therein, and leave to amend has most certainly not been granted by the Court.  See id.

## C.    Plaintiffs' Motion For Class Certification

On July 19, 2013, Plaintiffs filed a motion for class certification.  See Pls.' Mot. (Dkt. #174); Pls.' Mem. in Supp. of Mot. for Class Cert. (Dkt. #175).  In their class motion, Plaintiffs sought certification of a subset of the claims proposed for class treatment in the Second Amended Complaint, and the scope of the proposed classes in the class motion was substantially narrower than the proposed class in the Second Amended Complaint.  Compare Second Am.

---

[2]  Plaintiffs also sought certification of a Defendant class, consisting of "all members of the NCAA that have sports teams in which student-athletes participate," with the NCAA as the proposed representative of the Defendant class.  See Consol. Compl. (Dkt. #25) at ¶¶ 122-23.
[3]  Plaintiffs' Second Amended Complaint also added a new Named Plaintiff, Kyle Solomon.  See, e.g., Second Am. Compl. (Dkt. #135) at ¶¶ 63-72.

Compl. (Dkt. #135) at ¶¶ 227, 289-91, with Pls.' Mem. in Supp. of Mot. for Class Cert. (Dkt. #175) at 1-3.  While we believe that Plaintiffs and their counsel would have great difficulty securing and maintaining certification of even the subset of claims raised in their class motion, there is little question that many of the proposed claims in the Second Amended Complaint simply are not and would not be suitable for class treatment.  See, e.g., disc. infra at 4 n. 4.  It is also clear that in their class motion, Plaintiffs and their counsel narrowed the claims for which they sought certification in recognition of these same issues.[4]  See Nov. 5, 2013 Hr'g Tr., Ex. A hereto, at 12:7-13:11.

In their motion, Plaintiffs sought certification of the following two classes:  (1) a Negligence / Medical-Monitoring Class; and (2) a Core-Issues Class.  See Pls.' Mot. (Dkt. #174) at 1-3.  The Negligence / Medical-Monitoring Class was defined in Plaintiffs' class motion as follows:

> All present or former students listed on a college team roster in the contact sports of football, wrestling, basketball, field hockey, ice hockey, lacrosse, or soccer, at any NCAA institution in any of 18 jurisdictions during the period 2004 through the present.

Id. at 1 (footnote omitted).[5]  On behalf of the Negligence / Medical-Monitoring Class, Plaintiffs sought injunctive relief in the form of a medical monitoring program.  See id.

---

[4]    In attempting to second-guess the class motion that was filed in this case on July 19, 2013, the Proposed Intervenors now assert that "courts regularly consider and certify damages classes seeking compensation for injuries particularly where, as here, the complaint challenges common practices or conduct."  Mot. for Leave to Intervene (Dkt. #195) at 11 n.12.  The pertinent caselaw, however, strongly suggests otherwise.  Indeed, courts have repeatedly held that class actions seeking damages for personal injuries pose significant obstacles to certification.  See, e.g., Hurd v. Monsanto, 164 F.R.D. 234, 239 (S.D. Ind. 1995) ("The claims of the class representative [in a toxic tort suit involving personal injuries] are, by definition, not typical of those of class members in such cases with respect to individual issues of proximate cause and unique unliquidated damages, so the representative cannot adequately represent the class in litigating these individual issues.") (quoting 3 H. Newberg, Newberg on Class Actions, § 17.11 (1992)); In re Baycol Prods. Litig., 218 F.R.D. 197, 205 (D. Minn. 2003) (denying class certification in a products liability case and noting that "courts have recognized that limitations exist when the claimed injury is tied to a complex course of conduct engaged in by the defendants over a long period of time, as opposed to a single act to which all class members were exposed to equally") (emphasis added); see also Amchem Prods. v. Windsor, 521 U.S. 591, 624 (1997) (affirming rejection of a class settlement of claims for bodily and personal injury, noting "[t]he Committee's warning . . . continues to call for caution when individual stakes are high and disparities among class members great").

[5]    A "Negligence/Medical-Monitoring Special-Relationship Subclass" was also proposed in Plaintiffs' class motion, consisting of members of the Negligence / Medical-Monitoring Class who did not attend an

(continued...)

The Core-Issues Class proposed in Plaintiffs' motion for class certification was defined as follows:

> All present or former students listed on a college team roster at any NCAA institution during the period 2004 through the present who participated in the contact sports of football, wrestling, basketball, field hockey, ice hockey, lacrosse, or soccer.

Pls.' Mot. (Dkt. #174) at 2.[6]  No relief, however, was sought on behalf of the Core Issues Class. See id.  Instead, Plaintiffs proposed that certain issues (e.g., the existence of a duty and the alleged breach of such duty) be adjudicated in this case but that in the event Plaintiffs prevailed on those issues, members of this proposed class could file individual suits to seek compensatory damages.  See id.; Pls.' Mem. in Supp. of Mot. for Class Cert. (Dkt. #175) at 32.[7]

### D.    Mediation

Several months ago, the parties jointly requested that briefing on Plaintiffs' motion for class certification be stayed pending mediation.  See Minute Entry (Dkt. #186).  An initial mediation session was, in turn, held before Judge Layn R. Phillips (ret.) on November 1, 2013. See Nov. 5, 2013 Hr'g Tr., Ex. A hereto, at 11:23-24.  In anticipation of that initial mediation session, the parties and their counsel made extensive written submissions to the mediator, and the parties are in the process of preparing additional materials.

The initial mediation session was productive.  The parties are, in turn, currently scheduling a second mediation session.  It is anticipated that the second mediation session will take place later this month.

---

(...continued)
NCAA-member institution in Illinois.  See Pls.' Mot. (Dkt. #174) at 2.  Plaintiffs Derek Owens and Angelica Palacios were proposed as representatives of this subclass.  See id.

[6]    A "Core-Issues Special-Relationship Subclass" was also proposed by Plaintiffs consisting of class members who do not or did not attend college in certain states, with Derek Owens and Angelica Palacios proposed as representatives of that subclass.  See Pls.' Mot. (Dkt. #174) at 2.

[7]    Briefing on Plaintiffs' class motion has been stayed pending mediation.  See Minute Entry (Dkt. #186) (staying further proceedings pending mediation); see also disc. infra at 5.

### E.    Additional Class Cases Are Filed

In the wake of the announcement of a proposed settlement of pending class actions against the National Football League, several new class cases were filed against the NCAA.[8] See Ex. B hereto.  Each of these new lawsuits contains class allegations and claims that are virtually identical to those asserted in this case.  See, e.g., Walker, et al. v. NCAA, No. 1:13-cv-00293 (E.D. Tenn. filed Sept. 3, 2013); DuRocher, et al. v. NCAA, et al., No. 1:13-cv-01570 (S.D. Ind. filed Oct. 1, 2013); Doughty v. NCAA, No. 3:13-cv-02894 (D.S.C. filed Oct. 22, 2013); Powell v. NCAA, No. 4:13-cv-01106 (W.D. Mo. filed Nov. 11, 2013); Caldwell, et al. v. NCAA, No. 1:13-cv-03820 (N.D. Ga. filed Nov. 18, 2013); Morgan, et al. v. NCAA, No. 0:13-cv-03174 (D. Minn. filed Nov. 19, 2013); Walton, et al. v. NCAA, No. 2:13-cv-02904 (W.D. Tenn. filed Nov. 20, 2013); Washington, et al. v. NCAA, Case No. 4:13-cv-02434 (E.D. Mo. filed Dec. 3, 2013).

On September 4, 2013, class counsel in this case filed with the Judicial Panel on Multidistrict Litigation a motion seeking transfer and consolidation of Arrington and Owens with similar concussion-related actions.  See Mot. for Transfer, In re NCAA Student-Athlete Concussion Injury Litig., MDL No. 2492 (J.P.M.L. Dkt. #1).  Given the number of other cases filed, the NCAA supports the request for transfer and consolidation, but several other parties and their counsel have opposed the motion.  See Resp. in Supp. of the NCAA (J.P.M.L. Dkt. #13). But see, e.g., Resp. in Opp. of Pls. Walker, et al. (J.P.M.L. Dkt. #11); Resp. in Opp. of Pls. DuRocher, et al. (J.P.M.L. Dkt. #18); Resp. in Opp. of Def. Kranos Corp. (J.P.M.L. Dkt. #30);

---

[8]    As of the date of this filing, eight (8) new class actions have been filed against the NCAA.  See Ex. B hereto.  Those cases and the jurisdictions in which they were filed are listed on Exhibit B to this memorandum.  Other than the class case that was filed in the Eastern District of Missouri late today, each of the new filings has been brought to the attention of the Judicial Panel on Multidistrict Litigation.  See MDL Motion (J.P.M.L. Dkt. #1) (Walker, et al. v. NCAA, No. 1:13-cv-00293 (E.D. Tenn.)); Notice of Related Action (J.P.M.L. Dkt. #16) (DuRocher, et al. v. NCAA, et al., No. 1:13-cv-01570 (S.D. Ind.)); Notice of Related Action (J.P.M.L. Dkt. #23) (Doughty v. NCAA, No. 3:13-cv-02894 (D.S.C.)); Notice of Related Action (J.P.M.L. Dkt. #24) (Powell v. NCAA, No. 4:13-cv-01106 (W.D. Mo.)); Notice of Related Action (J.P.M.L. Dkt. #37) (Caldwell, et al. v. NCAA, No. 1:13-cv-03820 (N.D. Ga.); Morgan, et al. v. NCAA, No. 0:13-cv-03174 (D. Minn.)); Notice of Related Action (J.P.M.L. Dkt. #38) (Walton, et al. v. NCAA, No. 2:13-cv-02904 (W.D. Tenn.)).

Resp. in Opp. of Defs. All American Sports Corp., et al. (J.P.M.L. Dkt. #34); Resp. in Opp. of Pl. Powell (J.P.M.L. Dkt. #42).  A hearing before the Multidistrict Panel on the motion for transfer and consolidation is set for December 5, 2013.  See Notice of Hearing Session (J.P.M.L. Dkt. #20).

### F.     The Instant Motion

On October 29, 2013, the Proposed Intervenors filed the instant motion, seeking leave to intervene.  See Mot. for Leave to Intervene (Dkt. #195).  The Proposed Intervenors allege that they suffered concussions while playing college football at NCAA member institutions in the late 1980s and early 1990s.  See id. at 2.  They seek leave to intervene in this case and to participate in the ongoing mediation.  See id. at 1-2, 15.  They have also asked that discovery in this case be reopened.  See Nov. 11, 2013 Corresp. fr. J. Edelson to M. Mester, Ex. C hereto, at 1-2.

### III.   ARGUMENT

For the reasons set forth below, the Proposed Intervenors cannot satisfy the requirements of either Fed. R. Civ. P. 24(a) or Fed. R. Civ. P. 24(b).  See disc. infra at 7-15.  Accordingly, their motion for leave to intervene should be denied, at least until the ongoing mediation in this case has concluded.  See id.

### A.     Proposed Intervenors Fail To Satisfy The Requirements
### For Intervention As A Matter Of Right

"There are four requirements for intervention of right under Fed. R. Civ. P. 24(a), in the absence of a statute giving an absolute right to intervene:  (1) timeliness, (2) an interest relating to the subject matter of the main action, (3) at least potential impairment of that interest if the action is resolved without the intervenor, and (4) lack of adequate representation by the existing parties."  Reid v. Ill. State Bd. of Educ., 289 F.3d 1009, 1017 (7th Cir. 2002); see also Fed. R. Civ. P. 24(a)(2).  As numerous courts have recognized, however, "[f]ailure to satisfy even one of these requirements is sufficient to warrant denial of a motion to intervene as a matter of right."

Blau v. Harrison, 2006 WL 644016, at *2 (N.D. Ill. 2006). And as discussed more fully below, the Proposed Intervenors fail to satisfy two requirements of Rule 24(a)(2), as they cannot show either (i) that disposition of this matter will impede or impair their ability to protect their interests or (ii) that their application is timely. See Fed. R. Civ. P. 24(a)(2).[9]

**1.     The Disposition Of <u>Arrington</u> Will <u>Not</u> Impair The Ability Of The Proposed Intervenors To Protect Their Interests**

The Proposed Intervenors cannot satisfy Rule 24(a), because their apparent interest in pursuing money damages from the NCAA will remain wholly unimpaired if their motion is denied. As the Seventh Circuit has held, "[i]mpairment exists when the decision of a legal question . . . would, as a practical matter, foreclose the rights of the proposed intervenor in a subsequent proceeding." Shea v. Angulo, 19 F.3d 343, 347 (7th Cir. 1994). Resolution of the issues raised by the operative pleadings in this case, however, would not foreclose any of the rights of the Proposed Intervenors. See disc. infra at 8-11.

In their motion, the Proposed Intervenors claim that "[i]f the case doesn't settle and Arrington prevails on class certification and at trial, Intervenors wouldn't be eligible to receive any money for the medical bills and other damages they've already incurred." See Mot. for Leave to Intervene (Dkt. #195) at 10. In support of this assertion, they rely on the claim for relief set forth in Plaintiffs' motion for class certification as well as communications with

---

[9]    In their motion, the Proposed Intervenors rely heavily on several Seventh Circuit cases, suggesting that intervention is somehow necessary to protect their interests. See Mot. for Leave to Intervene (Dkt. #195) at 6-10. The continuing vitality, however, of those decisions has been called into question by the Supreme Court and, at best, they support only limited intervention. See Devlin v. Scardelletti, 536 U.S. 1 (2002). The Seventh Circuit stated in Crawford that "[b]ecause only parties may appeal, it is vital that district courts freely allow the intervention of unnamed class members who object to proposed settlements and want an option to appeal an adverse decision." Crawford v. Equifax, 201 F.3d 877, 881 (7th Cir. 2000); see also Felzen v. Andreas, 134 F.3d 873, 874 (7th Cir. 1998) (intervention "is the proper mechanism for nonparties to protect interests that may be adversely affected by a trial court's judgment"). In 2002, however, the Supreme Court decided Devlin, in which it expressly held that unnamed members of settlement classes need not intervene in order to preserve their appellate rights. See Devlin, 536 U.S. at 14 ("Just as class action procedure allows nonnamed class members to object to a settlement at the fairness hearing without first intervening . . . it should similarly allow them to appeal the District Court's decision to disregard their objections."). See also Robert F. Booth Trust v. Crowley, 687 F.3d 314, 318-19 (7th Cir. 2012) ("Devlin holds that a member of a class certified under Rule 23, who asks the district court not to approve a settlement, need not intervene in order to appeal an adverse decision."). Accordingly, Devlin makes the case for intervention far less compelling. See Devlin, 536 U.S. at 14.

Plaintiffs' counsel.  See id. at 5-6, 10-11.  As noted above, however, the Second Amended Complaint is the operative pleading in this case, and the definition of the proposed class in the Second Amended Complaint remains current.  See, e.g., Ridings v. Canadian Imp. Bank, 94 F.R.D. 147, 150 n.3 (N.D. Ill. 1982) ("Although for all practical purposes the classes proposed appear to be nearly identical, the Court will not view plaintiffs' motion for class certification as a de facto amendment of their pleadings as they suggest."); see also, e.g., Costelo v. Chertoff, 258 F.R.D. 600, 604-05 (C.D. Cal. 2009) ("The Court is bound to class definitions provided and, absent an amended complaint, will not consider certification beyond it."); Phelps v. Parsons Tech., 2010 WL 4386918, *3 (S.D. Ind. 2010) ("Plaintiffs have not moved to amend their Amended Complaint and cannot broaden the proposed definition through their Motion to Certify."); Saf-T-Gard v. Vanguard Energy, 2012 U.S. Dist. LEXIS 174222, *19 (N.D. Ill. 2012) ("A motion for class certification cannot operate as a de facto amendment of a complaint.").

The Proposed Intervenors and the class they seek to represent are plainly encompassed by the class proposed in the Second Amended Complaint.  Compare Second Am. Compl. (Dkt. #135) at ¶ 227, with Proposed Compl. (Dkt. #195-1) at ¶ 47.  Moreover, the NCAA's focus in the ongoing mediation in this case has been and continues to be the class as proposed in the Second Amended Complaint (as opposed to the narrower classes proposed in Plaintiffs' class motion).  See disc. supra at 3-5, 8-9.  Finally and as discussed more fully below, the Proposed Intervenors are always free to file suit and pursue their individual claims if they are dissatisfied with the manner in which this case is being handled by class counsel.  See disc. infra at 10-11. As such, the motion of the Proposed Intervenors very much rests on a false premise, and there is no basis for the suggestion by the Proposed Intervenors that their rights will somehow be impaired if they are not allowed to intervene in this case.  See Mot. for Leave to Intervene (Dkt. #195) at 4-5, 10-13.

9

### 2. If A Settlement Is Reached, The Proposed Intervenors And Their Counsel Will Have A Full Opportunity To <u>Either</u> Object To The Settlement Or Opt Out

The Proposed Intervenors further claim that "[t]he potential for a beneficial resolution to arise from the mediation is even worse, as proposed class counsel has made clear that the case is being mediated without regard for the personal injury claims." <u>See</u> Mot. for Leave to Intervene (Dkt. #195) at 11. The <u>Arrington</u> parties have not reached any settlement, however, and the Proposed Intervenors' objection is thus very much premature. Moreover, Fed. R. Civ. P. 23 contains multiple safeguards to prevent the sorts of prejudice alluded to by the Proposed Intervenors in the event a settlement is in fact reached. <u>See</u> Fed. R. Civ. P. 23(e); <u>see also</u> <u>Woodall v. Drake Hotel</u>, 913 F.2d 447, 451 (7th Cir. 1990) ("Rule 23(e) requires notice and judicial approval of proposed settlements in order to safeguard the rights of class members and allow consideration of the broader implications of a class action settlement.") (internal quotation omitted).

Should a settlement be reached, absent class members such as the Proposed Intervenors would have ample opportunity to raise objections to the settlement or, in the alternative, opt out. <u>See</u>, <u>e.g.</u>, <u>Shakman v. City of Chicago</u>, 2007 U.S. Dist. LEXIS 36506, at *9-10 (N.D. Ill. 2007) ("Burke will not be prejudiced if intervention is denied. He will remain free, if he chooses, to object to the settlement agreement and to opt-out and pursue his individual lawsuit should the settlement agreement be approved. . . . In this case, Burke is free to submit any objection or comments he wishes to the pending settlement. Especially in light of these alternative avenues for Burke to voice his dissent . . . there is no prejudice to him from denying intervention."); <u>Doe v. Cin-Lan</u>, 2011 U.S. Dist. LEXIS 835, at *10-13 (N.D. Ill. 2011) (denying intervention as of right because the proposed intervenor had available the avenues of objection or opt-out to oppose the class settlement); <u>In re NASDAQ Market-Makers Antitrust Litig.</u>, 187 F.R.D. 465, 491 (S.D.N.Y. 1998) ("Class members need not formally intervene in order to raise their objections to a proposed settlement. . . . [The proposed intervenor's] only evidence of inadequate

representation is that class counsel negotiated a settlement of which he does not approve. This difference of opinion can be adequately addressed through this Court's consideration of the fairness of and timely objections to the settlement. Intervention as of right is unnecessary and unwarranted."). Unless and until a settlement is actually reached, however, any objection to that settlement and its terms is premature, and if a settlement is reached, then the Proposed Intervenors will be able to fully protect their rights by objecting or opting out. See, e.g., Shakman, 2007 U.S. Dist. LEXIS 36506, at *9-10.

### 3. The Proposed Intervenors Are Also Free To Pursue Their Individual Claims

Irrespective of whether a settlement is reached in this case, the Proposed Intervenors are also free to pursue their individual claims in a forum and at a time of their own choosing. See Shakman, 2007 U.S. Dist. LEXIS 36506, at *9. Any statutes of limitations that may apply to the claims of the Proposed Intervenors were tolled when this case was first filed, based upon the description of the claims of the Proposed Intervenors in their moving papers. See, e.g., American Pipe v. Utah, 414 U.S. 538 (1974). Indeed, it was precisely to avoid the sort of prejudice on which the Proposed Intervenors purport to base their motion that the rule in American Pipe was first developed. See id. at 553-54. Under American Pipe, absent class members like the Proposed Intervenors do not run any risk of having otherwise viable claims extinguished while a putative class action encompassing those claims is pending. See id. at 550-52. Accordingly, the Proposed Intervenors can elect to pursue their claims on an individual basis if that is their preference. See, e.g., Shakman, 2007 U.S. Dist. LEXIS 36506, at *9-10.

### 4. The Proposed Intervenors' Motion Is Also Untimely

"Whether a motion to intervene was made in a timely fashion is determined by reference to the totality of the circumstances." Shea, 19 F.3d at 348. In the Seventh Circuit, four considerations guide this analysis: "(1) [t]he length of time the intervenor knew or should have known of his interest in this case, (2) the prejudice to the original parties caused by the delay,

(3) the resulting prejudice to the intervenor if the motion is denied, and (4) any unusual circumstances." Id.; see also Reich v. ABC/York-Estes Corp., 64 F.3d 316, 321 (7th Cir. 1995) ("The test for timeliness is essentially one of reasonableness: potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly. In making this determination, we must also consider the prejudice to the original parties if intervention is permitted and the prejudice to the intervenor if his motion is denied.") (internal quotation omitted). Because the Proposed Intervenors waited over two years to seek intervention in this case, their motion is untimely, as discussed more fully below. See disc. infra at 12-13.

As noted, the Proposed Intervenors will not be prejudiced if the Court denies their motion. See disc. supra at 10-11. In contrast, the existing parties in Arrington would be significantly prejudiced by intervention at this late date. Since this case was first filed in September of 2011, the parties have engaged in extensive class-related discovery, serving and responding to numerous interrogatories and requests for admission, exchanging over 137,000 pages of documents, conducting an evidentiary hearing on a discovery dispute and taking thirteen depositions in a class discovery period that closed on May 9, 2013. See Proposed Joint Discovery Plan (Dkt. #116) at 1-2; Unopposed Motion For Extension Of Time To File Plaintiffs' Motion For Class Certification (Dkt. #162) at 1. Plaintiffs filed their class motion on July 19, 2013, and the parties are currently engaged in mediation. See Minute Entry (Dkt. #186). The Arrington case is thus at a relatively advanced stage.

Notwithstanding the fact that the period for class discovery is closed and a class motion is pending, the Proposed Intervenors have already stated their desire to reopen discovery in this case if intervention is allowed. See Nov. 11, 2013 Corresp. fr. J. Edelson to M. Mester, Ex. C hereto. It would be inefficient and prejudicial, however, to permit the Proposed Intervenors and their counsel to reopen what was a lengthy and extensive discovery period and in so doing,

further delay the resolution of the class issue. See Nov. 15, 2013 Corresp. fr. M. Mester to J. Edelson, Ex. D hereto.

In addition, intervention at this point makes little sense given the pending mediation and the motion for transfer and consolidation before the Multidistrict Panel. See disc. supra at 6-7. The claims of Mr. Moore and Mr. Nichols fall squarely within the scope of the motion for transfer and consolidation filed by class counsel in this case, and therefore, their claims may soon be consolidated in this jurisdiction or elsewhere. See disc. supra at 6-7, 9; Mot. for Transfer (J.P.M.L. Dkt. #1) at passim. If the Multidistrict Panel consolidates the pending cases, the transferee court will appoint counsel to represent the members of the proposed class or classes. See In re Plasma-Derivative Protein Therapies Antitrust Litig., 2010 U.S. Dist. LEXIS 34882, at *21 (N.D. Ill. 2010) ("Rule 23(g)(3) of the Federal Rules of Civil Procedure permits the appointment of interim class counsel, a practice which the Manual for Complex Litigation . . . encourages in cases as involved as this one."). It would be highly inefficient, however, to begin litigating the claims of the Proposed Intervenors in this case when they are likely to be consolidated with other similar cases and claims and transferred to this or another court for adjudication.

## B. The Proposed Intervenors Also Fail To Satisfy The Requirements For Permissive Intervention

The Proposed Intervenors likewise do not satisfy the requirements for permissive intervention. See disc. infra at 13-15. "A permissive intervenor must demonstrate that (1) it shares a common question of law or fact with a party, (2) its application is timely, and (3) the court has independent jurisdiction over its claims." In re Discovery Zone, 181 F.R.D. 582, 589 (N.D. Ill. 1998); see also Fed. R. Civ. P. 24(b)(2).[10] "When considering whether to grant a

---

[10] The decision in Discovery Zone, on which the Proposed Intervenors attempt to rely, only illustrates why the Proposed Intervenors fail to demonstrate the sort of prejudice that would warrant intervention here. See Discovery Zone, 181 F.R.D. 597-98. Although the court in Discovery Zone permitted McDonald's to intervene in both the settlement approval process and settlement negotiations, that holding relied on unique circumstances and is highly distinguishable from the case at hand. See Reich v. ABC/York-Estes Corp., 64 F.3d 316, 321 (7th Cir. 1995) ("intervention cases are highly fact specific and

(continued...)

motion for permissive intervention, the Court must 'consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" Blau, 2006 WL 644016, at *3; see also Shea, 19 F.3d at 349 (noting that intervention determination requires the court "to accommodate two competing policies: efficiently administrating [sic] legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged, on the other hand") (alteration in original).

As discussed above, intervention at this stage would significantly prejudice the parties by delaying proceedings at an advanced stage of the litigation. See disc. supra at 12-13. The parties in this case have been litigating this matter for over two years and after extensive discovery and the filing of a class certification motion, have commenced mediation. To permit intervention now and to reopen discovery, however, would unnecessarily delay the resolution of the parties' claims and defenses. See id. It would also unduly complicate the ongoing mediation and make settlement less likely.

In contrast, denial of the Proposed Intervenors' motion would not prejudice them or anyone else. As discussed above, the operative pleading of Plaintiffs in this case subsumes the claims of the Proposed Intervenors. See disc. supra at 9, 12-13. Further, the motion for class certification, which the Proposed Intervenors claim abandons a request for monetary relief,

---

(...continued)
tend to resist comparison to prior cases"). Discovery Zone was a securities class action brought by a class of individual shareholders and McDonald's Corp., the largest shareholder of Discovery Zone. See Discovery Zone, 181 F.R.D. at 587. McDonald's had litigated the case as an absent class member alongside class counsel for some time, but the class was redefined and McDonald's was excluded from the settlement class. See id. (noting that McDonald's and class counsel had "developed strategies and divided responsibilities in connection with discovery and motion practice"). Because McDonald's and the class members would be competing for a common fund and because McDonald's was no longer a member of the class, the court permitted McDonald's to participate in settlement negotiations and the approval process for the settlement. See id. at 593. The Discovery Zone case is thus distinguishable from the present case, because McDonald's was no longer a member of the class and would have suffered significant prejudice if forced to pursue relief in subsequent litigation. The Proposed Intervenors, however, have expended no time or money in litigating this matter alongside the existing parties and would suffer no prejudice if forced to litigate their claims on their own. The Proposed Intervenors are also members of the proposed class in this case with rights under Rule 23 to object to, appeal from or opt out of any settlement. See Fed. R. Civ. P. 23(e).

contains express reservations of all such claims for subsequent litigation.  See Pls.' Mem. in

Supp. of Mot. for Class Cert. (Dkt. #175) at 24-27 ("To eliminate any claim-preclusion threat . . .

Plaintiffs ask that . . . [the court's] certification order expressly state that class litigation only

encompasses a negligence claim for medical monitoring and excludes all their individual

damages claims, which are expressly reversed [sic] for subsequent litigation.").  Intervention

would thus be improper and unnecessary.[11]  See Shea, 19 F.3d at 349.

## IV.   CONCLUSION

WHEREFORE, the NCAA respectfully requests that the Court deny the motion for leave

to intervene.

Dated:  December 3, 2013

Respectfully submitted,

/s/ Mark S. Mester
One of the Attorneys for Defendant
National Collegiate Athletic Association

Mark S. Mester
   mark.mester@lw.com
Sean M. Berkowitz
   sean.berkowitz@lw.com
Johanna M. Spellman
   johanna.spellman@lw.com
Katherine Walton
   katherine.walton@lw.com
LATHAM & WATKINS LLP
233 South Wacker Drive, Suite 5800
Chicago, Illinois 60606
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

---

[11]  For the reasons set forth above, the Court should deny the Proposed Intervenors' motion and refuse to permit intervention.  See disc. supra at 7-15.  In the event the Court does grant the motion, however, the NCAA respectfully requests that the Court narrow the scope of any such intervention to permit the Proposed Intervenors to only participate in the approval process for any class settlement, provided the parties are able to reach such an agreement.  This sort of limitation is common and well-supported in the caselaw.  See, e.g., Discovery Zone, 181 F.R.D. at 601 ("It is axiomatic that courts may put limitations on a party's ability to intervene permissibly under Rule 24(b)(2).  However, courts have also exercised discretion in limiting intervention as of right under 24(a)(2)."); see also Fed. R. Civ. P. 24 Advisory Committee Notes (intervention "may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings").  As discussed above, however, to force the NCAA to answer the Proposed Intervenors' proposed complaint and begin litigating their claims, despite the pending mediation, the advanced stage of this case and the pending motion before the Multidistrict Panel, would create serious inefficiencies.  See disc. supra at 11-14.

J. Christian Word
    christian.word@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004-1304
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ADRIAN ARRINGTON, DEREK OWENS, ANGELA PALACIOS, and KYLE SOLOMON individually and on behalf of all others similarly situated,** | ) ) ) ) ) | **Case No. 1:11-cv-06356** |
| **Plaintiffs,** | ) ) | **Judge John Z. Lee** |
| **v.** | ) ) | **Magistrate Judge Geraldine Soat Brown** |
| **NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,** | ) ) ) | **JURY DEMAND** |
| **Defendant.** | ) | |

**EXHIBITS TO**
**MEMORANDUM IN OPPOSITION TO**
**MOTION FOR LEAVE TO INTERVENE**

  **A**   Transcript of November 5, 2013 Proceedings before the Honorable John Z. Lee

  **B**   List of Additional Cases Filed Since September 1, 2013

  **C**   November 11, 2013 Correspondence from Jay Edelson to Mark Mester

  **D**   November 15, 2013 Correspondence from Mark Mester to Jay Edelson

# EXHIBIT A

<pre>
 1                 IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3   ADRIAN ARRINGTON, et al.,      )  Docket No. 11 C 6356
                                    )
 4                   Plaintiffs,    )
                                    )
 5          v.                      )  Chicago, Illinois
                                    )  November 5, 2013
 6   NATIONAL COLLEGIATE ATHLETIC   )  9:00 o'clock a.m.
     ASSOCIATION, et al.,           )
 7                                  )
                     Defendants.    )
 8
                  TRANSCRIPT OF PROCEEDINGS - MOTION
 9              BEFORE THE HONORABLE JOHN Z. LEE

10   APPEARANCES:

11   For the Plaintiffs:          SIPRUT PC, by
                                  MR. JOSEPH J. SIPRUT
12                                17 North State Street
                                  Suite 1600
13                                Chicago, Illinois 60602

14                                HAGANS BERMAN SOBOL SHAPIRO, by
                                  MS. ELIZABETH A. FEGAN
15                                1144 West Lake Street
                                  Suite 400
16                                Oak Park, Illinois 60301

17   For the Defendants:          LATHAM & WATKINS LLP, by
                                  MS. JOHANNA MARGARET SPELLMAN
18                                MS. KATHERINE S. WALTON
                                  233 South Wacker Drive
19                                Suite 5800
                                  Chicago, Illinois 60606
20

21

22                     ALEXANDRA ROTH, CSR, RPR
                        Official Court Reporter
23                     219 South Dearborn Street
                              Room 1224
24                     Chicago, Illinois 60604
                          (312) 408-5038
25
</pre>

1    APPEARANCES:   (Continued)

2    For the Intervenor:            EDELSON LLC, by
                                    MR. JAY EDELSON
3                                   MR. RAFEY BALABANIAN
                                    350 North LaSalle Street
4                                   Suite 1300
                                    Chicago, Illinois 60654
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1          (Proceedings had in open court:)

2          THE CLERK:  11 C 6356, Arrington versus National

3    Collegiate Association, for motion hearing.

4          MR. SIPRUT:  Good morning, your Honor.  Joe Siprut on

5    behalf of Arrington and class.

6          MS. FEGAN:  Good afternoon -- good morning, your

7    Honor.  Elizabeth Fegan on behalf of plaintiffs.

8          MS. SPELLMAN:  Good morning.  Johanna Spellman and

9    Katherine Walton on behalf of defendant NCAA.

10          MR. EDELSON:  Good morning, your Honor.  Jay Edelson

11    on behalf of proposed intervenors along with Rafey Balabanian.

12          MR. BALABANIAN:  Good morning, your Honor.

13          THE COURT:  Good morning, counsel.

14          I have reviewed the motion as well as I have also

15    received some correspondence recently from the parties with

16    regard to the mediation.  And for purposes of disclosure, I

17    have also received correspondence from the Hausfeld firm, which

18    I think was CC'd to counsel as well, with regard to their

19    thoughts either formal or informal with regard to the motion to

20    intervene and this entire process.

21          Mr. Siprut, why don't you give me some quick status on

22    where we stand at the moment.

23          MR. SIPRUT:  Last week we were in New York for

24    mediation on the case.  We presently have the MDL with fully

25    briefed motions under advisement.  We now have a motion to

1    intervene filed by Mr. Edelson.  So our initial position as to

2    the motion to intervene is that it's really premature

3    procedurally because until we know what the MDL panel is going

4    to do, we don't know where the case is going to go.

5           So whether there is going to be a case to intervene in

6    here will theoretically be decided by the MDL panel.  So I

7    think at a minimum, we ought to take a wait-and-see approach,

8    wait until the MDL panel issues a ruling.  And then and only

9    then we can deal with Mr. Edelson's motion to intervene here.

10          THE COURT:  What is currently pending before the MDL?

11   Has there been a final transfer order?  Or is it all

12   conditional at this point?

13          MS. FEGAN:  Your Honor, the MDL hearing is set for

14   December 5.  And we have been scheduled for oral argument on

15   that date.  We have pending obviously plaintiffs' motion to

16   transfer the matter here, objections from the Hausfeld firm in

17   Tennessee as well as a case that's been filed in Indiana, and I

18   think a third one that's in Pennsylvania.

19          We've also filed our own petition to intervene in the

20   Tennessee action to try and, you know, obviously stay that

21   matter, have it dismissed or have it transferred here under

22   statute, given that we have been pending for over two years and

23   discovery is completed and we have a pending motion for class

24   certification.

25          So from plaintiffs' perspective, as Mr. Siprut said,

1    we do believe that we should wait until after the MDL hearing

2    on December 5.  Typically the MDL panel rules within

3    approximately three weeks at this point, sometimes as little as

4    two.  Particularly given the holidays, we expect a ruling by

5    the end of December.

6         And at that point we can reconvene with all these

7    matters.  So it's not just Mr. Edelson's issue, but kind of a

8    larger global issue we have at this point about where we are

9    going to proceed and how.

10        THE COURT:  Okay.  So with regard to -- I am just

11   trying to understand exactly what's before the MDL.  Has there

12   been a -- I haven't seen it if there has been.  Has there been

13   a final order of transfer to the MDL?  No, right?  Right now

14   it's been conditionally transferred?

15        MS. FEGAN:  Not --

16        MR. SIPRUT:  Neither.

17        MS. FEGAN:  -- even conditionally.

18        MR. SIPRUT:  It's at the earlier stage, the proceeding

19   step, which is we're going --

20        THE COURT:  You are trying to get it together.

21        MR. SIPRUT:  Exactly.

22        MS. FEGAN:  It's fully briefed and set for hearing.

23        THE COURT:  Okay.  Well, I have reviewed the motion to

24   intervene.  And let me go ahead and hear from the potential

25   intervenors.

1              MR. EDELSON:  Thank you, your Honor.

2              I don't want to belabor the brief that we wrote.

3    Basically we've been tracking this case and along with the

4    public.  And we always understood it to be about personal

5    injury claims and additional medical monitoring claims.  When

6    we followed up with Ms. Fegan's partner, Steve Berman, to ask

7    him about the status of the mediation, he made it clear that

8    they jettisoned the personal injury claims.  They have now made

9    public statements to the press at CBS Sports saying that the

10   personal injury claims never had any chance to succeed on a

11   class-wide basis.

12             We believe that if they are not pursuing those claims

13   on behalf of the class and if they are now taking an

14   antagonistic position to the class they were -- that they were

15   appointed to represent, interimly, someone has to step into

16   that.  And the idea that they're going to go through at the

17   mediation and potentially impact these important claims, which

18   were always in our view the core of the case, is something that

19   is not appropriate.

20             The idea also that Ms. Fegan suggested that we should

21   wait until after the MDL decides everything before we have an

22   opportunity to participate in the lawsuit is something which I

23   don't think is supported by case law.  We are allowed to file a

24   complaint.  We don't have to move to intervene.  We are doing

25   that because we think it's the most efficient thing to do to

1    get the issue in front of your Honor who's already issued a

2    decision on interim lead.  We're trying to do this in the most

3    responsible way we can.

4           If your Honor were to deny that, we're certainly free

5    to file our own complaint.  And then at that point we can be

6    heard as part of the MDL, and our clients have a stake in this.

7    And they could state their position while -- where the Court --

8    where the case ought to go forward.

9           During that time, our -- our clients ought to be able

10   to take positions with regard to the case.  For example, it

11   seems like Ms. Fegan suggested discovery is now done.  We would

12   like to understand if discovery was ever done into the personal

13   injury claims.  If not, someone ought to be doing that.

14          So I -- I just don't think there is any precedent or

15   reason behind the idea that we should wait a few months before

16   our clients, who may be the only people willing to represent

17   the core claims -- you know, before they can do so.

18          THE COURT:  Well, I think that before we get into the

19   mediation or to the extent that the parties are comfortable

20   doing so, I think Ms. Fegan's point -- I took Ms. Fegan's point

21   to mean that perhaps it might be prudent to wait to see where

22   the case finally ends up, to kind of figure it all out because

23   if you are trying to intervene here, they are trying to

24   intervene in Tennessee, we got correspondence from Tennessee

25   counsel basically saying, you know, the case should stay in

1  Tennessee and Tennessee is the lead case -- I mean, it's all
2  across the map.

3          And so to the extent if the MDL in its wisdom decides
4  to consolidate everything and send it to one Judge, then
5  certainly it may be prudent to wait to allow that Judge,
6  whether it's me or someone else, to make that determination to
7  figure out how this case is going to proceed.  Whether or not,
8  for example, there will be different classes?  Will there be
9  subclasses perhaps?  And how exactly that Judge wants to
10 address the motion and class certification issues.

11         The question in my mind is really a matter of
12 prejudice, right?  It's what prejudice would the potential
13 intervenor suffer if we were to wait until the MDL panel
14 decides on the motions that are pending before it.  And I guess
15 that goes to some extent -- that segues to the mediation.

16         But my understanding at least reviewing the motion for
17 class certification that was filed was that the motion for
18 class certification seeks to certify a class with regard to
19 particular issues, really a 23(b)(2) class, of particular
20 issues, and ask the Court to preserve individual claims as to
21 damages, allowing that to proceed either on an individual basis
22 or on a separate class basis.  I think the intervenor's point
23 is, well, then you should have said that in your complaint as
24 opposed to just saying it in your motion.

25         But what sort of prejudice would your clients suffer,

1   Mr. Edelman, if in fact that's how it proceeded?

2          MR. EDELSON:  Quick clarification, your Honor.

3   They -- that's how we read their motion too.  When they

4   clarified and we got this in e-mails and now public statements,

5   they said, no, we can't get a class certified on personal jury

6   claim.  We are not proceeding on that basis.

7          So we always understood that they were going to try to

8   get a class certified later on.  And now they said, no, that's

9   done.

10         There are two forms of prejudice.  First of all,

11  statute of limitations, which should have been tolled.  If they

12  were doing their job and they had not abandoned the claims, the

13  statute of limitations would be tolled.  The second you file a

14  class action it's tolled as to all individuals.

15         Now that they have abandoned that, the statute is

16  running, even though nobody in the class understands that.

17  That's the first -- that's the first and most important form of

18  prejudice.

19         The second is, we don't know what's happening at the

20  mediation.  The -- there is very concerning to us when you got

21  lead counsel making public statements going after the class'

22  core claims.  We don't -- I don't want to make any accusations

23  because I know Mr. Berman is a fine lawyer, and I have the

24  utmost respect for Mr. Siprut and Ms. Fegan as well.

25         But it's disconcerting out there.  We don't know what

1    happened in the mediation, what's going to happen at the

2    mediation.  And that could further -- we assume that -- that

3    the reason all of this is happening like that is because it's

4    going to compromise people's claims.

5              THE COURT:  Ms. Fegan, why don't you address some --

6              MS. FEGAN:  Sure.

7              THE COURT:  -- of those points.

8              MS. FEGAN:  So there is a couple things here to

9    address.  First, I think it's black letter law that

10   typically -- and perhaps what Mr. Edelson is confused about is

11   typically mass torts are not certified as class actions.  They

12   might be MDL'd and grouped together and proceed along some type

13   of group basis.  But it is not under, for example, Rule

14   23(b)(3).

15             We have always in our complaint and in pleadings

16   before this Court always talked about either bringing a medical

17   monitoring claim separately or as a prayer for relief under a

18   negligence claim.  That's because states sometimes differ.

19   Some states see medical monitoring as relief for negligence,

20   and some states they allow medical monitoring claims to proceed

21   separately.  Obviously we also had a breach of contract claim,

22   which now has turned into our core issues subclass on behalf of

23   the 51 states.

24             So first, there is no prejudice here.  Second, Mr.

25   Edelson, as he admitted, could file a complaint today, filed a

1    complaint yesterday.  If he has personal injury claims, he

2    should file those and protect his clients or the class he

3    purports to represent.

4          And there is two final two things here.  If this case

5    proceeds forward, whether successfully at mediation or

6    otherwise, he could file his separate complaint, attempt to be

7    MDL'd or file a complaint in this district and seek

8    consolidation or transfer to your Honor.  But he's trying to

9    make an end run around the statutory rules that do provide for

10   determining whether there are common issues.

11         Second, if this case were to settle, and if he were

12   unhappy with the settlement or thought we were somehow

13   prejudicing his clients, Rule 23 specifically provides for the

14   opportunity for class members to either object -- and there

15   will be a whole objection proceeding that the Hausfeld firm and

16   others, Mr. Edelson, can certainly participate in, to

17   participate in the settlement.  Or second, they can opt out.

18   They can opt out of any prejudicial terms they believe exist

19   and separately pursue those claims.

20         So there is an orderly way to proceed both in the

21   first instance, with consolidation transfer and for Courts to

22   determine whether there are common issues.  And second of all,

23   if there is a settlement, which there is not as of today, to

24   determine whether they want to object or opt out to that

25   settlement.

1    So there is no prejudice here.

2    THE COURT:  Let me ask you this:  What about Mr.

3    Edelson's point that the plaintiff in this case has, for lack

4    of -- using his words, abandoned the individual money damages

5    claim?  Is that an accurate assessment of your current

6    position?

7    MS. FEGAN:  No.  Well, let me say this:  We don't

8    believe that we ever brought class personal injury claims.  So

9    there was nothing to abandon.  We have always made clear that

10   there were several things that the NCAA we believe failed to do

11   that resulted in inaccurate return-to-play guidelines or no

12   return-to-play guidelines that resulted in injury, and that

13   these clients and student athletes needed medical monitoring to

14   determine whether and to what extent they suffered any brain

15   injuries.

16   So in some respects, if the Court was aware of the NFL

17   litigation, this case has always been different because there

18   has only been four class representatives that purport to

19   represent the student athletes and bring these class claims

20   separately when you see the NFL litigation references in the

21   settlement there.  There is, you know, thousands or hundreds of

22   players that have filed individual personal injury claims that

23   were grouped together in a mass tort context.

24   So, you know, it's not -- and I think that might be

25   part of the confusion or misperception that's occurring now.

1      THE COURT:  In the second amended complaint, second

2  consolidated amended complaint, there is a prayer for relief

3  for compensatory damages.  What does that address?

4      MS. FEGAN:  That addressed originally our breach of

5  contract claim.  And as we went through and analyzed those

6  claims, we determined that we were more likely to obtain

7  certification of a liability class by bringing basically the

8  duty and breach, the core issues, under a breach of contract

9  claim and leave the question of individual damages for some

10  type of individual proceeding.  And so you see that addressed

11  throughout core issue, subclass in our motion.

12      THE COURT:  Okay.  Mr. Edelson, I'll provide you with

13  a brief response if you want to respond to that.

14      MR. EDELSON:  Yes, I guess one question I have is,

15  what is the prejudice to them?  It's clear that we -- we have

16  already given you papers showing all their public statements

17  and statements in the pleadings, where we understood as your

18  Honor seemed to understand too they were pursuing personal

19  injury claims just at some later point.  So it's interesting to

20  hear Ms. Fegan say, oh, no, forget what we said to everybody

21  else who's been watching the case.  That's not true.

22      But the real question I have is, what's the prejudice

23  to them?  If they are not interested in pursuing that part of

24  the case, and the Hausfeld firm isn't either, what is the

25  prejudice for us coming in and pursuing that?  We're all

1    representing the same people.  You would think that they would

2    say, terrific.  We think that you're -- you're going to lose on

3    this case.  I prefer that they say that privately instead of

4    publicly.  But that's okay.  They can have different views.

5         And your Honor is going to decide whether we can get a

6    class certified or not.  But why not let us come in and let's

7    do the work.

8         THE COURT:  But also, Mr. Edelson, as I seem to

9    recall, the class is also different, isn't it?  Aren't you also

10   advocating a larger class than the one currently that's being

11   asked for proposed by the plaintiffs in this case?

12        MR. EDELSON:  It's -- I think their class is probably

13   larger, if I understand it.  Ours is limited to people who

14   suffered personal injury.  I don't want to speak to --

15        THE COURT:  Right.  I thought as part -- I thought the

16   plaintiffs' class was limited in geographic scope as well as in

17   time?

18        Is that correct, Ms. Fegan?

19        MS. FEGAN:  That's correct for purposes of liability

20   class.  That's correct.

21        THE COURT:  Right.  And so the class, Mr. Edelson,

22   that you would propose would be a different class that's

23   defined differently than that.

24        MR. EDELSON:  Yeah, it's bigger and smaller.  I agree

25   with that.

1      The reason we are intervening -- and we have no

2  problem.  If your Honor thinks it makes more sense for us to

3  file a separate complaint, we have absolutely no problem with

4  that.  Obviously we'll do whatever your Honor wants regardless.

5  But that is totally a reasonable path for us.

6      The reason that we're doing this is because of

7  efficiencies.  Your Honor had this case for a few years.  There

8  has already been a lot of discovery done.  And we're trying to

9  move quickly.  That -- that's the real reason that we're doing

10 it.

11     MR. SIPRUT:  Your Honor, just a brief word.  The issue

12 that Mr. Edelson is addressing is what is the prejudice to

13 allowing us to intervene?  And believe me when I tell you that

14 we have about 15 pages worth of thoughts in response to that

15 point.  But the real issue that I think your Honor was putting

16 your finger on earlier is, what is the prejudice to even

17 getting in this issue at this point, given that the MDL panel

18 has this issue under advisement.  We don't know where the case

19 is going.

20     So the real threshold issue which is really for this

21 morning is, do we have this argument now?  Do we brief this

22 issue now?  Or do we simply enter and continue Mr. Edelson's

23 motion until we see where the case goes?

24     There is zero prejudice to taking that approach, which

25 is really the issue that I think your Honor was asking about.

1  Once the MDL panel makes a decision, assuming for the sake of

2  argument the case ends up back here, Mr. Edelson will come in

3  and make all his brilliant arguments about why he should be

4  allowed to intervene.  And we will oppose them.  We will file a

5  brief and tell you why he's wrong.

6        But that's not an issue I imagine your Honor wants or

7  needs to get into this morning when we got this threshold issue

8  out there, where is the case going to go?

9        THE COURT:  With regard to the mediation, I take it

10  the mediation only involves this case?  Does it involve any of

11  the Tennessee people at all?

12        MS. FEGAN:  It's only lead counsel in this, in the

13  Arrington matter, correct.

14        THE COURT:  Do defendants have a thought one way or

15  the other on this issue?

16        MS. SPELLMAN:  Your Honor, yes.  We agree that it

17  makes sense to just wait until the panel rules on the judicial

18  panel on multi-district litigation rules after the December 5

19  hearing.  It's only a month away.  At that point we know

20  where -- whether these cases are consolidated and where they

21  end up.  We think it makes sense to defer briefing on the

22  motion to intervene until that occurs.

23        THE COURT:  All right.  I actually like to brief the

24  issue now.  And so I'd like the -- to the extent that

25  defendants and the plaintiffs are going to object to the motion

1    to intervene, I'd like you to submit a response to the motion.
2    How long will it take you to do so?
3              MS. FEGAN:  Your Honor, could we have 28 days?
4              THE COURT:  That's fine.  Mr. Edelson, do you want a
5    reply?
6              MR. EDELSON:  Yes, your Honor.  My slight concern is
7    that they are just trying to delay to get a settlement done.
8    And that's why they need 28 days.  But they said on the record
9    that there will be no prejudice to us or our clients.  So I
10   take them at their word.
11             Can we have seven days to reply?
12             THE COURT:  That's fine.  That brings us to
13   December 9.  Obviously if any settlement is reached, it will
14   have to be -- you will have to certify a class.  You have to go
15   through all the various procedural requirements.  And if there
16   are any objections obviously to the class or otherwise, we will
17   have to hear it at that point in time.
18             But I think at this point I would like to brief the
19   issues on intervention and take a look at the positions of the
20   parties.  And I will go ahead and issue ruling on that.  In the
21   interim, if the MDL decides to do what it wants to do, then we
22   will see where that goes.  But I'd like to at least have the
23   briefing done so that it can be packaged for the MDL and
24   whoever gets this case subsequently, whether it's me or whoever
25   it may be.

1          All right.  And you anticipate that the MDL will issue

2    its ruling sometime probably late December, early January?

3          MS. FEGAN:  I do.  I would anticipate before the

4    holidays in December.

5          THE COURT:  Okay.  So that we have something in our

6    calendar, let's set this case for further status December 19.

7          THE CLERK:  December 19 at 9:15.

8          MS. FEGAN:  Thank you, your Honor.

9          THE COURT:  Thank you.

10          MR. EDELSON:  Thank you, your Honor.

11          MR. SIPRUT:  Thank you, your Honor.

12       (Which were all the proceedings had at the hearing of the

13         within cause on the day and date hereof.)

14                         CERTIFICATE

15          I HEREBY CERTIFY that the foregoing is a true, correct

16    and complete transcript of the proceedings had at the hearing

17    of the aforementioned cause on the day and date hereof.

18

19    /s/Alexandra Roth                      11/12/2013

20    _____   _____
      Official Court Reporter                  Date
      U.S. District Court
21    Northern District of Illinois
      Eastern Division
22

23

24

25

# EXHIBIT B

<u>**EXHIBIT B**</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ADRIAN ARRINGTON, DEREK** | ) | |
| **OWENS, ANGELA PALACIOS, and** | ) | |
| **KYLE SOLOMON individually and on** | ) | **Case No. 1:11-cv-06356** |
| **behalf of all others similarly situated,** | ) | |
| | ) | **Judge John Z. Lee** |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Magistrate Judge Geraldine Soat Brown** |
| | ) | |
| **NATIONAL COLLEGIATE ATHLETIC** | ) | **JURY DEMAND** |
| **ASSOCIATION,** | ) | |
| **Defendant.** | ) | |

**ADDITIONAL CASES FILED**
**SINCE SEPTEMBER 1, 2013**

1.   <u>Walker, et al. v. NCAA,</u>
        Case No. 1:13-cv-00293 (E.D. Tenn., filed Sept. 3, 2013)

2.   <u>DuRocher, et al. v. NCAA, et al.,</u>
        Case No. 1:13-cv-01570 (S.D. Ind., filed Oct. 1, 2013)

3.   <u>Doughty v. NCAA,</u>
        Case No. 3:13-cv-02894 (D.S.C., filed Oct. 22, 2013)

4.   <u>Powell v. NCAA,</u>
        Case No. 4:13-cv-01106 (W.D. Mo., filed Nov. 11, 2013)

5.   <u>Caldwell, et al. v. NCAA,</u>
        Case No. 1:13-cv-03820 (N.D. Ga., filed Nov. 18, 2013)

6.   <u>Morgan, et al. v. NCAA,</u>
        Case No. 0:13-cv-03174 (D. Minn., filed Nov. 19, 2013)

7.   <u>Walton, et al. v. NCAA,</u>
        Case No. 2:13-cv-02904 (W.D. Tenn., filed Nov. 20, 2013)

8.   <u>Washington, et al. v. NCAA,</u>
        Case No. 4:13-cv-02434 (E.D. Mo., filed Dec. 3, 2013)

# EXHIBIT C

**Edelson LLC**

350 North LaSalle, Suite 1300, Chicago, IL 60654
t 312.589.6370 f 312.589.6378

www.edelson.com

November 11, 2013

**Via Electronic Mail**

Sean M. Berkowitz
Mark S. Mester
Latham & Watkins LLP
233 S. Wacker Dr., Suite 5800
Chicago, Illinois 60606
sean.berkowitz@lw.com
mark.mester@lw.com

J. Christian Word
Latham & Watkins LLP
555 Eleventh St., NW, Suite 1000
Washington, D.C. 20004
christian.word@lw.com

Re:     **NCAA Concussion Litigation**

Dear Counsel:

My firm represents Frank Moore ("Moore") and Anthony Nichols ("Nichols"), the proposed intervenors in *Arrington, et al, v. NCAA*, Case No. 11-6356 (N.D. Ill.)  As explained in their motion to intervene, Moore and Nichols seek to continue litigating the concussion-related personal injury claims that proposed class counsel and the named representatives recently abandoned.[1]  Given that we will ultimately be proceeding on these claims through either the *Arrington* case or a separately filed class action against the NCAA and its university-members, we would like to schedule a meet and confer to discuss certain key issues, including the inspection and copying of relevant discovery that has already been produced in *Arrington*.

In the meantime, we remind you of your client's instant and continuing duty to preserve all documents, records, and other data or information, whether in paper or electronic format, whether real or virtual, and wherever situated, that are relevant to (or which may lead to the discovery of information relevant to) the *Arrington* matter as well as to future related actions that may be commenced.  Please also be advised that Moore and Nichols' discovery will necessarily

---

[1]     Steve Berman, proposed class counsel in the *Arrington* case, has represented that he is not pursuing or negotiating the resolution of any concussion-related personal injury claims. While we take Mr. Berman at his word, we note that he is no longer able to settle such claims through mediation or otherwise. *See Smith v. Sprint Commc'ns Co., L.P.*, 387 F.3d 612, 614 (7th Cir. 2004) (overturning approval of class settlement where class counsel entered negotiations in a "disarmed state, unable to 'use the threat of litigation to press for a better offer'").

Edelson LLC

include requests for verifiably responsive documents, records, and any other computer-generated information in native, electronic format, structured or unstructured, and may further include, without limitation, any relevant computer, network or system environments such as operating systems, applications, middleware or scripts, all as generated and used by the NCAA in the regular conduct of its everyday activities. Moreover, where any evidence in the form of a handwritten, non-text, or other non-machine-readable original has been input into any word-processing, image capture, or other electronic information retention device or application (irrespective of whether such input and storage of such input took place on any networked computer, non-networked computer, laptop, or mobile data generating device, including but not limited to PDA's and "Blackberry" type devices), the NCAA is hereby notified that both original paper documents as well as computer-generated information derived from such original paper documents will be requested, and should be preserved. Please be further advised that any privilege log(s) that the NCAA provides should state with specificity the types of documents or records, authors, senders, recipients (where applicable), dates of creation, and reasons for privilege assertion as to each document, together with a copy of any metadata associated with each such document.

We also remind the NCAA of its continuing duty to suspend all routine document retention policies and processes to the extent they involve the destruction of any evidence that is or is likely to be considered relevant in this matter, irrespective of format (paper, electronic or other) and location, and irrespective whether such document or records destruction policies and processes permit the destruction of what may be claimed as "identical, "temporary" or ephemeral evidence. To that end, Moore and Nichols intend to request production of the NCAA's relevant document retention and/or destruction policies. Finally, we remind the NCAA of its continuing obligation to preserve digital evidence that may come into existence after the date of this letter, or which may exist now or in the future but of which the NCAA may have no current knowledge.

To proceed efficiently, let's begin our discussion of these issues as soon as possible. Are you available for a telephone conference this Friday (11/15) at 11:00 a.m. CT? If not, let us know what time works for you and we'll make ourselves available. We look forward to working with you to expedite the discovery process.

Best regards,

EDELSON LLC

Jay Edelson

Illinois / Colorado / California

# EXHIBIT D

**Mark S. Mester**
Direct Dial: 312.876.7623
mark.mester@lw.com

233 S. Wacker Drive, Suite 5800
Chicago, Illinois 60606
Tel: +1.312.876.7700  Fax: +1.312.993.9767
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Abu Dhabi | Milan |
| Barcelona | Moscow |
| Beijing | Munich |
| Boston | New Jersey |
| Brussels | New York |
| Chicago | Orange County |
| Doha | Paris |
| Dubai | Riyadh |
| Düsseldorf | Rome |
| Frankfurt | San Diego |
| Hamburg | San Francisco |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

November 15, 2013

## BY E-MAIL

Jay Edelson, Esq.
Edelson LLC
350 North LaSalle Drive, Suite 1300
Chicago, Illinois 60654-7582

Re:    NCAA Concussion Litigation

Dear Counsel:

We write in response to your letter of November 11, 2013. See Nov. 11, 2013 Corresp. fr. J. Edelson to S. Berkowitz and C. Word. As an initial matter, we respectfully disagree with your assertion that the Plaintiffs and their counsel in Arrington have somehow "abandoned" various of their class claims. See id. As you know, the Plaintiffs in Arrington received leave from the Court to file a Second Amended Complaint on February 13, 2013. See Minute Entry (Dkt. #123). The Second Amended Complaint, in turn, asserts claims on behalf of a proposed class that is defined as follows:

> All current and former NCAA student-athletes who experienced one or more head impacts while playing sports at an NCAA school resulting in a concussion or concussion-like symptoms.

Second Am. Compl. (Dkt. #135) at ¶ 227.

As we made clear in our submission to the Judicial Panel on Multidistrict Litigation, we believe the operative class definition in Arrington remains the one set forth in the Second Amended Complaint. See NCAA Response to Motion for Transfer, In re NCAA Student-Athlete Concussion Injury Litig., MDL No. 2492 (J.P.M.L. Dkt. #13) at 3 n.3; see also, e.g., Ridings v. Canadian Imperial Bank of Commerce Trust Co., 94 F.R.D. 147, 150 n.3 (N.D. Ill. 1982) ("Although for all practical purposes the classes proposed appear to be nearly identical, the Court will not view plaintiffs' motion for class certification as a de facto amendment of their pleadings as they suggest."); Saf-T-Gard Int'l v. Vanguard Energy Servs., 2012 U.S. Dist. LEXIS 174222, *19 (N.D. Ill. 2012) ("A motion for class certification cannot operate as a de facto amendment of a complaint."). Moreover, the proposed class in the Second Amended Complaint plainly subsumes the class you now belatedly purport to represent. Compare Second Am. Compl. (Dkt. #135) at ¶ 227, with Class Action Complaint (Dkt. #195-1) at ¶ 47.

**Jay Edelson, Esq.**
**November 15, 2013**
**Page 2**

LATHAM&WATKINS LLP

      Aside from your misrepresentation of the pleadings in <u>Arrington</u>, we believe your request is otherwise premature for two reasons. <u>First</u>, pursuant to Judge Lee's November 5, 2013 Order, briefing on your motion for leave to intervene will not be completed until December 9, 2013. <u>See</u> Minute Entry (Dkt. #197). We do not believe it is necessary or appropriate, however, to meet and confer regarding discovery unless and until the Court has ruled on your motion. <u>Second</u>, as you are aware, the Plaintiffs in <u>Arrington</u> have filed a motion for transfer and consolidation with the Judicial Panel on Multidistrict Litigation. <u>See</u> Motion for Transfer, <u>In re NCAA Student-Athlete Concussion Injury Litig.</u>, MDL No. 2492 (J.P.M.L. Dkt. #1). In that motion, the Plaintiffs in <u>Arrington</u> seek transfer and consolidation of <u>Arrington</u> with similar concussion-related actions that have been filed in recent months. <u>See id.</u>; <u>see also</u> <u>DuRocher, et al. v. NCAA, et al.</u>, Case No. 1:13-cv-01570 (S.D. Ind. filed Oct. 1, 2013); <u>Walker, et al. v. NCAA</u>, Case No. 1:13-cv-0029 (E.D. Tenn. filed Sept. 3, 2013); <u>Doughty, et al. v. NCAA</u>, Case No. 3:13-cv-02894 (D.S.C. filed Oct. 22, 2013). The claims of Mr. Moore and Mr. Nichols fall squarely within the scope of the motion for transfer and consolidation filed by the Plaintiffs in <u>Arrington</u>, and thus, they may well be consolidated either in this jurisdiction or elsewhere. If the Panel consolidates the NCAA concussion lawsuits in an MDL proceeding, however, the transferee court will appoint counsel to represent the members of the proposed class or classes, and the NCAA will confer with that counsel regarding discovery and other issues.

      Finally, we wish to reassure you that the NCAA is fully mindful of its document and data preservation obligations. The NCAA has preserved material in accordance with its legal obligations since the onset of the <u>Arrington</u> litigation and will continue to do so as required by applicable rules and laws.

      Sincerely,

Mark S. Mester
of LATHAM & WATKINS LLP